**UNITED STATES of America**

v.

**TOBIN PACKING CO., INC.,**
**Defendant.**

**No. 72-CR-257.**

United States District Court,
N. D. New York.

Aug. 9, 1973.

James M. Sullivan, Jr., U. S. Atty., Syracuse, N. Y., for plaintiff; George H. Lowe, Asst. U. S. Atty., of counsel.

DeGraff, Foy, Conway & Holt-Harris, Albany, N. Y., for defendant; John Carter Rice, Albany, N. Y., of counsel.

## MEMORANDUM—DECISION AND ORDER

JAMES T. FOLEY, Chief Judge.

### I.

Defendant, the Tobin Packing Co., Inc., is charged in the instant indictment with fifty (50) counts of violating § 13 of the Rivers and Harbors Act of

1899, 33 U.S.C. § 401 et seq. In a single motion the following relief is sought: (1) Dismissing the indictment as insufficient, or in the alternative dismissing 49 counts; (2) directing the government to provide a bill of particulars; (3) seeking an order to discover and inspect certain items; (4) granting defendant permission to inspect the minutes of the grand jury.

 The defendant's motion to dismiss the indictment because of its insufficiency lacks legal support in my judgment. It is settled law that the only purpose of an indictment is to charge all of the essential facts of a criminal offense thereby informing the defendant so that he will neither be misled in preparing his defense nor twice prosecuted for the same offense. In questioning the "sufficiency" of the indictment, emphasis must be focused on these practical functions and not on technical considerations. United States ex rel. Harris v. State of Illinois, 457 F.2d 191, 197 (7th Cir. 1972); 8 J. Moore, Federal Practice, ¶ 704 at 7–19 (2d ed. 1972). An indictment will not be dismissed when there is some competent evidence to sustain the charge made by a Grand Jury. United States v. Reyes, 280 F. Supp. 267, 269 (S.D.N.Y.1968); see also Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Tane, 329 F.2d 848, 853 (2d Cir. 1964). The indictment here consists of a general accusation that defendant caused refuse matter to be discharged and deposited in Patroon Creek, a tributary of navigable waters of the United States, and thereafter lists fifty dates, each as one count violations of Title 33, U.S.Code §§ 407 and 411. I find the indictment sufficient in this respect. United States v. Bally Manuf. Corp., 345 F.Supp. 410 (E.D.La.1972).

Defendant's contention that the acts will not support fifty separate violations raises more serious problems if the discharge was of a continuous nature. See United States v. Hercules, Inc., Sunflower Army Am.Pl., 335 F.Supp. 102 (D. Kansas 1971). The government attorney asserts that while the statute does not ascribe what shall constitute separate offenses, one day is a reasonable demarcation for each count. There have been no submissions of any pertinent case law or statutory history to support this assertion.

 It is my opinion that § 13's approach toward protecting rivers by its broad language is not aimed at the polluting substance *per se* but at the acts of the polluter. Indeed, excepting only " 'refuse matter' . . . flowing from streets and sewers . . . ", any discharge of any refuse matter is prohibited by the Act. United States v. Pennsylvania Industrial Chem. Corp., (PICCO), 329 F.Supp. 1118, 1120 (W.D. Pa.1971), remanded on other grounds, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). The language of this statute does not provide criteria to multiply counts based on the kind or quantity of the polluting substance involved, its potential or actual harm, or the manner or length of time it takes to enter the water. It might seem anomalous to some that a person who dumps one gallon of refuse is as culpable as some discharging 100 times as much, or that two people emptying the same amount with one having twice the discharge rate, i. e., doing it in half as many days, are equally culpable. But the statute does not differentiate among the varied types of refuse that might be discharged. The statute by its clear terms is meant to punish each separate act of discharging or depositing refuse—not the discharge itself. Cf. United States v. Georgetown University, 331 F.Supp. 69, 73 (D.C.D.C. 1971). To sustain each count the government will have to show that each count refers to some act needed to cause the polluting on the separate and numerous dates mentioned. For example, the acts might be differentiated or isolated by time, distance or even by differences in the type of refuse [see United States v. S. S. Mormacsaga, 204 F.Supp. 701, 702 (E.D.Pa.1962)], or operation of the plant itself. However, the statute is addressed to *each act* resulting in a dis-

charge. The number of acts, i. e., counts, cannot be deduced from the mere size or length of time of a discharge without more, unless discontinuity of the flow or change in composition or other evidence indicates that certain actions necessarily were taken to further the discharging or depositing of refuse. United States v. Hercules, Inc., Sunflower Army Am. Pl., supra, 335 F.Supp. at 107. Whether the government can sustain such a factual basis to justify each count under the established principles applicable to criminal cases must await trial. Defendant's motion to dismiss any or all counts of the indictment must be and is denied at this stage of the prosecution.

The remaining portions of defendant's motion deals with obtaining information by a bill of particulars, discovery and inspection, and inspection of the grand jury minutes. The government has consented to these demands except for the following items which are challenged: (1) Defendant's bill of particulars which seeks to discover internal working documents of federal agencies (para. 8); (2) defendant's motion to discover essentially the same information demanded by the bill of particulars above; and (3) inspection of the grand jury minutes other than those of defendant's Vice President, Robert H. Griessel.

■ I find the objections voiced by the government on these items to be well founded in law and therefore deny defendant's motion to so obtain this information. Regarding the first two items, defendant has failed to show satisfactorily that this evidence is material or reasonable to their case and in any event, such government internal documents are expressly protected from discovery under Rule 16(b), Fed.R.Crim.Proc., except as to certain "examinations" and "tests". See Rule 16(a)(2). The government has agreed to supply tests and examinations demanded by defendant pursuant to this exception and properly refuse to reveal government documents not sub-

ject to it. Gollaher v. United States, 419 F.2d 520, 528 (9th Cir. 1969), cert. denied, 396 U.S. 960, 90 S.Ct. 434, 24 L. Ed.2d 424 (1969).

■ Regarding the inspection of grand jury minutes, it is settled law that defendant is entitled to inspect any testimony given by its officers before the grand jury. Fed.R.Crim.Proc. rule 16(a); see Wright & Miller, Fed.Prac. and Proc.: Civ. § 108 at pp. 179–180. But this rule does not otherwise permit any other minutes to be inspected. Fed. R.Crim.Proc. rule 6(e); United States v. Ramirez, 482 F.2d 807 (2d Cir. 1973). Therefore, defendant's motion to inspect the grand jury minutes is granted to the limited extent of Mr. Griessel's testimony, and is otherwise denied.

## II.

In light of defendant's submissions to this court detailing the expenditure of over one million dollars in pollution abatement equipment as a future participant in the Albany Sewer District and of the very recent Supreme Court decision United States v. Pennsylvania Industrial Chem. Corp., supra, some clarification seems appropriate. This decision discusses the history of the 1899 Refuse Act and its amendments, the Water Quality Act of 1965 (79 Stat. 903), and the Water Quality Improvement Act of 1970 (84 Stat. 91). The Court declared that the 1899 Act and these amendments are not antagonistic but complementary. *Id.*, 411 U.S. at 668, 93 S.Ct. at 1813–1814.

> Section 13 is one section of a comprehensive law enacted in 1899 to codify pre-existing statutes designed to protect and preserve our Nation's navigable waterways.

and,

> [t]he Water Quality Acts were a congressional attempt to enlist state and local aid in a concentrated water pollution control and abatement program.

*Id.*, 411 U.S. at 663, 668, 93 S.Ct. at 1811 and 1813.

These two different approaches to the problem of water pollution are not at odds, and obedience to one does not necessarily entail obedience to the other.

The Tobin Packing Co. asserts that it has made vigorous and substantial investments, in cooperation with state, local and federal authorities, to meet the standards of water quality that have been developed. This commendable activity to correct in good faith pollution of the past—long officially tolerated—is in compliance with the Water Quality Acts.

■ However, the instant indictment involves § 13 of the Refuse Act and to my mind is not contingent upon compliance with its later amendments. While both the original act and its amendments have been placed within the same title, they are really very separate in their methodologies of preventing the discharging or depositing of foreign substances in our navigable waters.

■ Tobin Packing Co. also contends earnestly that it has been "affirmatively misled" by agencies of the federal government in regard to its conduct which is now the basis of the instant indictment. This defense is available, of course, to defendant at trial under the *PICCO* decision. Defendant must show that there was reliance on its part, that the reliance was reasonable under the circumstances and that this justified their belief of the lawfulness of their actions. United States v. Pennsylvania Industrial Chem. Corp., supra, 411 U.S. at 673–675, 93 S.Ct. 1816–1817. This defense must also await trial for the appropriate determination of its factual weight and legal import in regard to the counts of the indictment.

Therefore, the motion of the defendant is granted to the limited extent indicated herein, and otherwise, denied without prejudice to renewal of the challenges that are in effect deferred to the trial.

It is so ordered.