**UNITED STATES of America**

v.

**ALLIED CHEMICAL CORPORATION et al.**

Crim. A. No. 76–0129–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 17, 1976.

William B. Cummings, U.S. Atty., Robert W. Jaspen, Asst. U.S. Atty., Dept. of Justice, E.D.Va., Richmond, Va., Bradford F. Whitman, Department of Land and Natural Resources, Pollution Control Section, Washington, D.C., for plaintiff.

Murray J. Janus, Dennis W. Dohnal, Joseph M. Spivey, III, Manning Gasch, Jr., Hunton & Williams, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Defendant Allied Chemical Corporation, a corporation organized and existing under the laws of the State of New York, allegedly owning and operating a manufacturing establishment at Hopewell, Virginia, moves to require the United States to elect or consolidate and dismiss Counts 1 through 456 of the indictment brought against them herein.

Counts 1 through 70 allege that Allied on each day of July and August, 1971, each of two days in September, 1971, and each of six days in April, 1972 unlawfully discharged and deposited from its alleged Hopewell establishment industrial wastes from the production of octahydro—1, 2, 4—metheno—2H—cyclobuta [cd] pentalen—2—one [hereinafter Kepone] into Gravelly Run, from which the refuse was washed into the James River, a navigable waterway of the United States. Counts 71 through 269 allege that Allied on each of fifteen days in September, 1971, and each day of October, 1971, November, 1971, December, 1971, January, 1972, February, 1972, and March, 1972, unlawfully discharged and deposited industrial wastes from the production of Tris °2—hydroxyethyl Isocyanurate [hereinafter THEIC] into Gravelly Run, from which the refuse was washed into the James River. Counts 270 through 356 allege that Allied on each of seventeen days of April, 1972, each day of May, 1972, and June, 1972, and each of nine days in July, 1972, unlawfully discharged and deposited from its alleged Hopewell establishment industrial wastes from the production of Kepone and Triallyl Isocyanurate [hereinafter TAIC] into Gravelly Run, from which the refuse was washed into the James River. Counts 357 through 361 allege that Allied on each of five days in July, 1972, unlawfully discharged and deposited from its alleged Hopewell establishment industrial wastes from the production of TAIC into Gravelly Run, from which the wastes were washed into the James River. Counts 362 through 456 allege that Allied on each of seventeen days in July, 1972, each day of August, 1972, and September, 1972, and each of seventeen days in October, 1972, unlawfully discharged and deposited from its alleged Hopewell establishment industrial wastes from the production of TAIC and THEIC into Gravelly Run, from which the wastes were washed into the James River. The aforesaid acts were all charged as violations of the Refuse Act, 33 U.S.C. § 407.

It is Allied's position that the counts are multiplicitous and that the government should be required to elect which of Counts 1 through 456 of the indictment it intends to prosecute or, in the alternative, that all the counts be consolidated into one count, and the contended repetitive counts be dismissed.

■ The term "multiplicity" refers to the practice of charging the commission of a single offense in several counts. *See* 8 *Moore's Federal Practice,* ¶ 8.07[1], at 8–47; Wright, *Federal Practice and Procedure,* § 142 (1969 ed.) at 306. "The vice of multiplicity is that it may lead to multiple sentences for the same offense, though for this there are remedies, and that 'the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes.'" Wright, *supra* at 311, *quoting United States v. Mamber,* 127 F.Supp. 925, 927 (D.Mass.1955). The Federal Rules on Criminal Procedure have, appropriately,

been drafted to discourage the practice. Rule 7(c)(1) provides in part that an indictment may allege ". . . in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." The Advisory Committee Note to Rule 7(c) noted that the rule ". . . is intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways." Following the preferred practice and the directive of the Federal Rules of Criminal Procedure, the Court will cause the government to elect between multiplicitous counts if they are present in the instant case.

■ The question is one of legislative intent, with doubts resolved against turning a single transaction into multiple offenses.

"When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity . . . [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . ."

*Bell v. United States,* 349 U.S. 81, 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). *See also Heflin v. United States,* 358 U.S. 415, 419, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). Section 33 U.S.C. § 407, a provision enacted in March of 1899, provides:

"It shall not be lawful to . . . discharge, or deposit . . . from the . . . manufacturing establishment . . . any refuse matter of any kind or description . . . into any navigable water of the United States."

A cosmetic reading of the indictment in the instant case seems to indicate that a 24-hour period was determined by the government to divide counts of the offense of refuse dumping against the defendant. The two cases which, to the best of the Court's knowledge, are the only cases that have interpreted the Act, reject the position that since the statute does not ascribe what shall constitute separate offenses, one day is a reasonable demarcation for each count. *United States v. Hercules, Inc.,* 335 F.Supp. 102, 106 (D.Kan.1971); *United States v. Tobin Packing Co., Inc.,* 362 F.Supp. 1127, 1129 (N.D.N.Y.1973). Other than as heretofore indicated, there does not appear to be any legislative or case support for the position, and indeed it may be difficult to justify why one day increments instead of hourly or weekly are controlling.

■ The Court is in full accord, however, with the interpretation of the Refuse Act advanced in the case of *United States v. Tobin Packing Co., Inc., supra* at 1129–30:

"The statute by its clear terms is meant to punish each separate act of discharging or depositing refuse—not the discharge itself. . . . To sustain each count the government will have to show that each count refers to some act needed to cause the polluting on the separate and numerous dates mentioned. For example, the acts might be differentiated or isolated by time, distance or even by differences in the type of refuse . . ., or operation of the plant itself. However, the statute is addressed to *each act resulting in discharge. The number of acts,* . . . *i. e.,* counts, cannot be deduced from the mere size or length of time of a discharge without more, unless discontinuity of the flow or change in composition or other evidence indicates that certain action necessarily were taken to further the discharging or depositing of refuse. [Citations omitted; emphasis original]."

Whether the government has alleged separate and distinguishable acts that can be said to be violations of the Refuse Act, however, in the Court's view cannot be determined until the proof is offered. *See United States v. Universal C.I.T. Credit Corporation,* 344 U.S. 218, 225, 73 S.Ct. 227,

97 L.Ed. 260 (1952); *United States v. Amick,* 439 F.2d 351, 359 (7th Cir. 1971). While the indictment seems to depend on 24-hour increments, other theories exist which, if proven, may sustain the charges. For example, the Hopewell establishment during the periods charged may have been consistently shut down in the evenings and the flow of alleged refuse interrupted until the subsequent morning. If so, 24-hour periods would support separate charges. Therefore, consistent with this memorandum the motion will be taken under advisement pending the proof offered at trial.

An appropriate order will issue.