**UNITED STATES of America**

v.

**UNITED STATES STEEL
CORPORATION.**

**Crim. No. 70 H Cr 12.**

United States District Court,
N. D. Indiana,
Hammond Division.

Nov. 10, 1970.

William C. Lee, U. S. Atty., John F. Flynn, Asst. U. S. Atty., for plaintiff.

Jay Lipe, James Harrington, Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., G. Edward McHie, Hammond, Ind., for defendant.

## MEMORANDUM

BEAMER, District Judge.

Defendant has been charged by the United States Attorney with despositing refuse in navigable waters, in violation of 33 U.S.C. § 407. That statute, more commonly known as the Refuse Act of 1899, provides as follows:

"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: Provided,

That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: And provided further, That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful. Mar. 3, 1899, c. 425, § 13, 30 Stat. 1152."

The information filed against the defendant is drawn in two counts. Count I charges that:

"On or about the 11th day of October, 1967, in the Northern District of Indiana, Hammond Division, UNITED STATES STEEL CORPORATION did unlawfully discharge and deposit and cause, suffer, and procure to be discharged and deposited refuse matter, that is, a quantity of a red-brown particulate sediment from a drain pipe on United States Steel Corporation property approximately 100 yards Northeast of Broadway Street, Gary, Indiana, on the North Bank of the Grand Calumet River into the East Branch of the Grand Calumet River, navigable waters of the United States, in violation of Title 33, United States Code, Sections 407, 411."

Count II is substantially the same, the only differences being the nature of the alleged pollutant ("an oily substance") and the location of the drain.

■■ Defendant has moved for dismissal on a number of different grounds. First of all, it contends that the information is defective because it fails to allege that defendant acted "wilfully and knowingly". But no such requirement appears in the statute, and the Court can see no basis for implying one. Defendant points out, quite correctly, that the absence of an express reference to knowledge or intent in the statute is not conclusive if the offense is of a type traditionally requiring *scienter*. See Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). However, the offense of depositing refuse in navigable waters is a *malum prohibitum*, not a *malum in se*,[1] and falls squarely within the category of "public welfare offenses" described in *Morissette*. As such, it could properly have been made the subject of strict criminal liability, and in the opinion of this Court, it was. The public is injured just as much by unintentional pollution as it is by deliberate pollution, and it would have been entirely reasonable for Congress to attack both.

■ The Refuse Act has been in existence for more than seventy years now; and as far as the Court can determine, no reported decision has ever imposed a *scienter* requirement. On the contrary, those courts presented with the question have uniformly held that no such requirement exists. *E. g.* United States v. Interlake Steel Corp., *supra*; The President Coolidge, 101 F.2d 683 (9th Cir., 1939); United States v. Bigan, 170 F.Supp. 219 (W.D.Pa., 1959). The Court holds that *scienter* is not an essential element under the Refuse Act.

■ Defendant's next argument is that the only type of pollution covered by the Refuse Act is that which obstructs navigation—an effect not alleged here. Arguing primarily from legislative history and past enforcement practices, de-

---

1. United States v. Interlake Steel Corp., 297 F.Supp. 912, 915 (N.D.Ill., 1969). Defendant maintains that the conduct proscribed by the Act would have constituted criminal trespass at common law, but that fact alone does not make it a *malum in se*. A *malum in se* is an act traditionally regarded as inherently evil, and the offense charged here falls well outside that category.

fendant contends that the Refuse Act is a "navigation statute", not a "pollution statute". But the fact remains that the part of the statute under which defendant is charged says nothing about effects on navigation,[2] and the vast majority of the courts faced with the question have ruled that no such limitation exists. *See, e. g.*, United States v. Esso Standard Oil Co., 375 F.2d 621 (3rd Cir., 1967); United States v. Ballard Oil Co., 195 F.2d 369 (2d Cir., 1952); La Merced, 84 F.2d 444 (9th Cir., 1936).

Defendant stresses the anomaly of a pollution statute with an express exception for matter "flowing from streets and sewers and passing therefrom in a liquid state". But if anything, that exception argues against defendant's interpretation. If, as defendant contends, the act was aimed solely at materials that obstructed navigation, why would Congress have made a special exception for liquid sewage—material with no apparent tendency to obstruct navigation in the first place?

Moreover, if the only deposits forbidden by the Act were those which obstruct navigation, the final proviso would make no sense. Under that proviso, the Secretary of the Army can permit otherwise illegal deposits if the Chief of Engineers finds that anchorage and navigation will not be impaired. If defendant's interpretation were correct, in any given case a permit would either be unnecessary—since non-obstructing deposits were never forbidden in the first place—or unobtainable—since the Secretary has no power to permit deposits that obstruct navigation. The final proviso makes sense only if the Act forbids deposits that pollute, as well as those which directly affect navigability.

In United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966) the Supreme Court examined the Act's history in some detail. It concluded that "[i]t is plain from its legislative history that the 'serious injury' to our watercourses * * * sought to be remedied was caused in part by obstacles that impeded navigation *and in part by pollution* [emph. added]". 384 U.S. at 228–229, 86 S.Ct. at 1429. This Court agrees. Obstruction of navigation is not an essential element under the first clause of the Refuse Act.

■ Defendant's next argument is that the information is insufficient because it fails to allege that defendant's discharges violated the water quality standards established for the Grand Calumet River under the Water Pollution Control Act, 33 U.S.C. § 1151 et seq. Defendant claims, and the government does not deny, that at all times relevant to this prosecution, defendant was in full compliance with all applicable federal and state water quality standards. The question thus presented is whether the Water Pollution Control Act creates an implied exception to the Refuse Act. Can a polluter relieve itself of liability under the latter by complying with the former?

The answer appears in the Control Act itself. 33 U.S.C. § 1174 provides that "[t]his chapter shall not be construed as * * * affecting or impairing the provisions of sections 407, 408, 409, and 411 to 413 of this title * * *". A clearer statement of congressional intent could hardly be found.

Defendant argues that this section should be read in historical perspective—that at the time of its enactment in 1948, the criminal provisions of the Refuse Act had never been used against industrial polluters, and that as a result, the section should not be deemed controlling in a case like this. But the Control Act was revised extensively in 1965 and again in 1970; and even if, as defendant maintains, the Refuse Act was never applied to the type of pollution involved here until after 1965, it certainly was

---

2. The Act itself applies only to navigable waters and their tributaries, but those are the only waters that Congress has power to regulate under the Commerce Clause.

thereafter,[3] and the section quoted above still survived the 1970 amendments.[4] The Court is well aware of the dangers of arguing from legislative inaction, but when a significant statute in an area of substantial public and legislative concern survives extensive revisions to the regulatory scheme in which it appears, some weight can properly be attached to that fact.

Defendant relies heavily on Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), where the Supreme Court observed that at times it becomes the task of the judiciary to "accommodate" or "reconcile" older statutes to newer ones. The analogy at first blush is appealing, but one significant difference exists between this case and *Boys Markets.* There the newer statute made no reference at all to the older one. Here the newer one provides expressly that the older one shall remain unimpaired. Here Congress has already spoken. The "accommodation" sought by the defendant would require the Court to repeal 33 U.S.C. § 1174, and no court has authority to do that.

Defendant protests that a literal reading of the Refuse Act will "hamstring" the administration of the Control Act by providing a self-incrimination defense to the latter's reporting requirements. *Cf.* Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). That may or may not be true. Certainly a corporation has no privilege against self-incrimination. But in any event, that problem is for Congress to resolve, not this Court.

■ Defendant stresses the incongruity and unfairness of a regulatory scheme that provides for specific water quality standards, and yet permits the criminal prosecution of companies that spend millions of dollars in complying. The Court has considerable sympathy for defendant's position. The result *is* incongruous, and perhaps unjust. But the law is clear, and unless it violates the Constitution, this Court has no power to change it. It is the opinion of the Court that the Refuse Act forbids the discharge into navigable waters of all refuse other than that flowing from streets and sewers in a liquid state—regardless of intent, regardless of the effect on navigation, and regardless of whether or not federal water quality standards are violated.

■ Defendant contends that the Act, thus interpreted, is unconstitutional. First of all, it argues that the Act is unconstitutionally vague. Defendant likens the word "refuse", as used in the Refuse Act, to the term "waste" in the Oklahoma petroleum statute struck down by the Supreme Court in Champlin Rfg. Co. v. Corporation Commission of State of Oklahoma, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed.2d 1062 (1931). But significant differences exist. The term "waste" is wholly subjective. To determine without legislative guidelines whether or not a given act constitutes waste, a court would have to strike its own balance between the anticipated harm to the public and the economic burden of the measures necessary to prevent it. No such inquiry is necessary to determine whether or not a given substance constitutes "refuse". In United States v. Standard Oil Co., *supra,* at 230, 86 S.Ct. at 1430, the Supreme Court held that "[t]he word 'refuse' includes all foreign substances and pollutants apart from those 'flowing from streets and sewers and passing therefrom in a liquid state' into the watercourse." While some, including this Court, might disagree with the breadth of that definition, no great exercise of judgment is required to decide whether a given sub-

---

3. *See e. g.,* United States v. Interlake Steel Corp., *supra.*

4. Section 1174 itself was amended by the 1970 Act. Part was deleted and the remainder renumbered, but the language relied on here remained the same.

stance fits it. The Act is not unconstitutionally vague.

■ Defendant next argues that the Act as interpreted above deprives it of riparian rights without just compensation, in violation of the Fifth Amendment. But defendant does not allege that it had any such rights in 1899, when the Act was passed; and if not, any rights defendant may have now were acquired subject to the restrictions of the Act. True, the Act was never enforced strictly until recent years, but as the Supreme Court said of a different law in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437, 88 S.Ct. 2186, 2202, 20 L.Ed.2d 1189 (1968), "[t]he fact that the statute lay partially dormant for many years cannot be held to diminish its force today". On the present state of the record, there is no basis for a finding that the Act deprived defendant of riparian rights without just compensation.

Finally, defendant argues that the Refuse Act and the Control Act, taken together, form an unconstitutional scheme of regulation. Defendant contends that "its demands are so conflicting, its standards so vague, that it violates the due process requirements of the Fifth Amendment of the Constitution". But defendant is being prosecuted under the Refuse Act, not the Control Act, and the Court has difficulty in seeing how the enactment of the latter could retroactively render the former unconstitutional. If, as defendant contends, the combined effect of the two acts is to deprive it of due process, the challenge should be addressed to the Control Act, not the Refuse Act.

■ Moreover, the Court does not agree that the two acts together create an unconstitutional result. In the last analysis, they impose distinct and independent, but nonconflicting duties. Under the Control Act, the defendant is required to obey the abatement orders of the Indiana Stream Pollution Control Board. Under the Refuse Act, defendant is required to refrain from polluting in the first place. Defendant does not contend that either requirement exceeds the power of Congress under the Commerce Clause; and if not, the Court sees no reason why Congress could not constitutionally require both. Obviously the two acts were not designed as an integrated regulatory scheme, but their requirements do not, as defendant claims, conflict.

The remainder of defendant's arguments challenge the technical sufficiency of the information. First, defendant argues that the information is defective because it fails to allege that the refuse was "other than that flowing from streets and sewers and passing therefrom in a liquid state". In an earlier era, that failure would undoubtedly have been fatal, since the exception appears in the clause that defines the offense, without being set off by punctuation or otherwise. See United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520 (1882); United States v. Cook, 84 U.S. 168, 21 L.Ed. 538 (1872). But times have changed, and courts no longer pay homage to the technicalities of common-law pleading. The modern rule is stated in Rule 7(c) of the Federal Rules of Criminal Procedure, which provides that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

■ The information here is sufficient under that rule. The essence of the offense charged is depositing refuse in navigable waters. The Court does not believe that a purely negative fact—the inapplicability of the streets and sewers exception—should be treated as an "essential fact" under this statute. An information serves two main purposes: to apprise the defendant of the charges against him, and to describe those charges with sufficient particularity to permit a defense of double jeopardy in the event of a subsequent prosecution for the same acts. See Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The information

here does both. No useful purpose can be served by disinterring the bones of Mr. Chitty at this late date.

Defendant next argues that the information should have stated whether or not defendant had a permit from the Secretary of the Army, and if so, whether the discharges in question were in violation of the conditions of the permit. However, the permit exception appears in the final proviso of the Act, and even under the cases cited by the defendant, an exception set off in a separate clause need not be negated in the information. Possession of a permit is a defense like any other, and the information is not defective for failure to anticipate it.

Defendant's final argument is that the information is defective because it fails to allege that the prosecution was undertaken at the request of the Secretary of the Army or some other official designated in 33 U.S.C. § 413. That precise argument was considered at length and rejected by Judge Robson in United States v. Interlake Steel Corp., *supra*. This Court concurs. 33 U.S.C. § 413 provides that "it shall be the duty of United States Attorneys to vigorously prosecute all offenders [against the Refuse Act and related provisions] whenever requested to do so by the Secretary of the Army or by any of the officials hereinafter designated." That provision is a command, not a limitation. *Cf.* United States v. Indiana Harbor Belt R. Co., 314 F.Supp. 691 (N.D., Ind., 1970). Ordinarily, decisions on whether or not to prosecute are within the sole discretion of the United States Attorney. 33 U.S.C. § 413 restricts that discretion by making prosecution mandatory when requested by one of the specified officials. But it certainly does not forbid prosecution on the District Attorney's own initiative.

The Court concludes that the information does state an offense against the United States, and the motion to dismiss will therefore be denied.