**UNITED STATES of America,**
**Plaintiff,**

v.

**HERCULES, INCORPORATED, SUNFLOWER ARMY AMMUNITION PLANT, LAWRENCE, KANSAS, Defendant.**

**Crim. A. No. T–CR–1625.**

United States District Court,
D. Kansas.

Nov. 18, 1971.

Roger K. Weatherby, Asst. U. S. Atty., Topeka, Kan., for plaintiff.

Leonard O. Thomas, Kansas City, Kan., for defendant.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

This is a criminal action brought by way of information. The information charges ten counts. The first count charges in pertinent part as follows:

"On or about the 19th of April, 1971, in the District of Kansas,

### HERCULES, INCORPORATED SUN-FLOWER ARMY AMMUNI-TION PLANT,

did unlawfully discharge and deposit refuse matter, to-wit: A chemical compound $NH_3$ (ammonia), into Kill Creek, a tributary of the Kansas River, a navigable water of the United States, from which said refuse matter washed or floated into said navigable water of the United States, in violation of 33 U.S.C. § 407 and § 411."

The remaining nine counts charge that the defendant "did unlawfully suffer the discharge and deposit of refuse matter" to continue for nine days after the original discharge on April 19, 1971, each day constituting a separate charge.

This case is before the Court at this time on several motions of the defendant, the discussion of which will be taken up seriatim.

The defendant's first motion is a motion to dismiss on the grounds that this prosecution represents an attempt to selectively and discriminatorily enforce 33 U.S.C. § 407. Defendant also asks for an order granting an evidentiary hearing on this motion. Defendant asks for an evidentiary hearing in order to show "that there are hundreds of industries in this area that are known to discharge great quantities of waste during every day of production"; that these industries have not been prosecuted; and that the reason Hercules was singled out for prosecution was because of its position as the operating contractor of a federal facility.

"Mere laxity in the enforcement of the criminal laws, however long continued, is not a denial of the equal protection of the laws. And a person guilty of violating the criminal laws cannot defend by showing that others equally guilty have not been prosecuted." 21 Am.Jur.2d, Criminal Law, § 231, p. 269.

■■ Assuming that there was some selectivity in enforcement of 33 U.S.C. §§ 407 and 411, this does not violate defendant's equal protection rights. In Sanders v. Waters, 199 F.2d 317 (10th Cir. 1952), it was held that the Oklahoma habitual criminal statute applies equally and impartially to all persons charged under it, and the fact that indictments and informations do not always charge violation of such statute where accused has had prior felony convictions does not invalidate statute as denying equal protection of the laws. "Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." Oyler v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 506, 7 L.Ed.2d 446 (1961).

In Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1943), it is stated:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."

The Tenth Circuit has subscribed to this view, as it must, most recently in Andrus v. Turner, 421 F.2d 290 (10th Cir. 1970), where it was stated:

"The equal protection of the laws within the meaning of the Fourteenth Amendment does not require exact equality. Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), reh. denied, 375 U.S. 870, 84 S.Ct. 27, 11 L.Ed.2d 99. It is only arbitrary and invidious discrimination that is condemned. Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L. Ed.2d 93 (1963)."

(This Court is assuming for the sake of argument that "equal protection" is embodied within the Fifth Amendment.) Discrimination would not be invidious unless deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary standard. Oyler v. Boles, supra.

Here the defendant does not even allege that they are the victim of invidious or purposeful arbitrary discrimination, but at most, that some selectivity is being used in choosing who to prosecute. For a case directly in point with the case at hand see United States v. Maplewood Poultry Company, 320 F.Supp. 1395 (D.Maine 1970). If defendant could show at an evidentiary hearing, what he has offered to show above, it is the Court's opinion that this would be far from arbitrary and invidious discrimination. Therefore, defendant's motion to dismiss on the ground that the prosecution represents an attempt to selectively and discriminatorily enforce 33 U.S.C. § 407 and for an evidentiary hearing is overruled.

The defendant next makes a motion to dismiss on the ground that the statute cannot be applied to the offense charged, because it is unconstitutionally vague. That is, as applied to a substance such as ammonia found in waters in their natural state, the statute imposes no

standards from which a citizen could tell in any particular instance, whether such substance, identical in form to natural substances already in the water, added to the navigable water, constituted refuse.

In United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966), any uncertainty as to definiteness was dispelled. Section 407, Title 33, United States Code, states in pertinent part:

> "It shall not be lawful to throw, discharge, or deposit . . . any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States . . . . ."

The Court confirmed in *Standard*, supra, what some must have suspected all along, that is, that the statute meant exactly what it said:

> "The words of the Act are broad and inclusive: 'any refuse matter of any kind or description whatever.' Only one exception is stated: 'other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States.' More comprehensive language would be difficult to select. The word 'refuse' does not stand alone; the 'refuse' banned is 'of any kind or description whatever,' apart from the one exception noted."

"The word 'refuse' includes all foreign substances and pollutants apart from those 'flowing from streets and sewers and passing therefrom in a liquid state' into the watercourse." *Standard*, supra.

The Court does not understand defendant to allege that they fall within the above exception and if they did this would be a matter of defense, not a proper ground for dismissal.

The argument of defendant that ammonia is found in the water in question in its natural state and so therefore cannot be a "foreign substance or pollutant" has no merit. The Court in *Standard*, supra, examined in length the legislative history of 33 U.S.C. § 407. The Court observed that the statute was a codification of several pre-existing statutes banning the discharge of numerous materials into navigable waters, and recognized that the meaning they gave the term "refuse" must reflect the present codification's statutory antecedents. Among the items the discharge of which was made unlawful by these earlier statutes were: dirt, mud, sand, stone, slate, gravel and acid. Most of these materials are found in all waterways to some degree, as is ammonia.

The statute is not vague but specifically makes the discharge of "any refuse matter of any kind or description whatever" unlawful. That ammonia is refuse within the meaning of the statute is obvious from the foregoing discussion and the *Standard* case. See also United States v. United States Steel Corporation, D.C., 328 F.Supp. 354 (1970), a similar case, where it was held that the aforesaid statute was not unconstitutionally vague.

Pursuant to the foregoing discussion, defendant's motion to dismiss on the ground the statute is unconstitutionally vague is overruled.

Defendant next makes a motion to dismiss on the ground that the information does not allege enough to show that the accused is not within the exception, i. e., the exception that exempts one who discharges refuse matter which flows from streets and sewers in a liquid state.

"It has uniformly been held that it is unnecessary for the government to allege or prove that the defendant does not come within a class excepted by the statute. Where there is a general provision defining the elements of an offense, neither the indictment or the proof need negative exceptions." Tritt v. United States, 421 F.2d 928, 929 (10th Cir. 1970), quoting Nicoli v. Briggs, 83 F.2d 375 (10th Cir. 1939). See also Knight v. Hudspeth, 112 F.2d 137 (10th Cir. 1940) cert. den., 311 U.S.

681, 61 S.Ct. 62, 85 L.Ed. 439 (1941); Welch v. Hudspeth, 132 F.2d 434 (10th Cir. 1943).

Defendant's motion to dismiss on the ground the information fails to negate the exception is overruled.

■ The defendant next makes a motion to dismiss on the ground that, if any ammonia was dumped into a watercourse, it was dumped into a tributary of a tributary of a navigable water and not the "tributary of a navigable water" as stated in the statute.

This contention borders on the frivolous. Defendant argues that the words of the statute should be interpreted in the ordinary every day sense. This Court agrees. A tributary is defined in Bouvier, Dictionary of Law Vol. II, p. 384 (5th ed.); Black's Law Dictionary p. 1677 (4th ed.), as "all streams flowing directly or indirectly into a river."

As stated in the government's brief, the decisive question is not the location of the alleged point of discharge, but, rather, whether the discharge will flow into a navigable waterway, and this is a question of fact. Defendant's contention that the regulation of the tributaries is beyond the power of Congress is misconceived for the same reason. Again, the question is not whether Congress possesses the power to enact legislation in regard to non-navigable tributaries, but whether Congress possesses the constitutional authority to regulate, and proscribe, discharges of refuse matter which flow into navigable waterways, regardless of the precise point of origination of discharge. It is well settled that Congress does have this power. And this Court is of the opinion that Congress constitutionally brought that power to bear in 33 U.S.C. § 407 to control acts such as defendant is alleged to have done here.

Defendant's motion to dismiss on the ground the alleged incident giving rise to this prosecution does not come within the purview of the Refuse Act is overruled.

The defendant next makes a motion to dismiss the information for the reason that the ten counts in the said information fail to allege separate offenses. After reading the defendant's brief, in essence what the defendant is contending, is that if a violation of law did occur it was one violation not ten violations. Therefore, defendant's above motion will be treated as a motion to strike nine counts.

As stated earlier the information charges one count of discharging refuse matter into the tributary of a navigable waterway and nine counts of suffering this discharge to continue, that is, the discharge is alleged to have begun April 19, 1971, and continued for nine more days. The government has charged one count for each day.

There has been only one case involving a violation of the Refuse Act, which deals with the question of what constitutes separate violations under the Act: United States v. S. S. Mormacsaga, 204 F.Supp. 701 (D.C.Pa.1962), where it was held that ship's discharge on three occasions separated by two and one-half hours and one and one-half hours and at three different geographic points, of refuse which varied with each occasion, constituted three offenses, rather than single offense, of discharging refuse into navigable waters.

This case is not especially helpful concerning the case at hand. The issue to be decided is, what criteria or measure is to be used in deciding what are separate offenses. The above case would tend to indicate, however, that the criteria is other than an arbitrary twenty-four hour period.

A common sense reading of the information itself shows that the government is charging one continuing act. In United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), the Court held that the offense made punishable under the Fair Labor Standards Act is a course of conduct. The Court said concerning this holding:

"Such a reading of the statute compendiously treats as one offense all violations that arise from that single-

ness of thought, purpose or action, which may be deemed a single 'impulse' . . . Merely to illustrate, without attempting to rule on specific situations: a wholly unjustifiable managerial decision that a certain activity was not work and therefore did not require compensation under F.L.S.A. standards cannot be turned into a multiplicity of offenses by considering each underpayment in a single week or to a single employee as a separate offense."

The above case is not completely analogous to the case at hand because this Court believes the Refuse Act makes unlawful each separate act of discharging refuse and not a course of conduct. However, the case is analogous in that here we have a continuing act. Here a managerial decision was allegedly made to discharge ammonia into a waterway. It arose from a singleness of thought, purpose or action, that is presumably, to get rid of it. The single impulse was making it possible for the ammonia to escape into the waterway. The government has charged after this initial impulse, i.e., starting the discharge, the defendant suffered it to continue. However, reason would dictate that a separate managerial decision was not made each day thereafter as to whether they should allow the discharge to continue. Neither did they have a different purpose each day. The purpose remained, as stated above, to get rid of it.

In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931), the distinction between continuous offenses and an offense that can be committed *uno ictus* is discussed:

"The distinction stated by Mr. Wharton is that, 'when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.' Wharton's Criminal Law (11th Ed.) § 34."

It is the Court's opinion that the government in the information charged one continuing act which was precipitated by one impulse and with singleness of purpose, and, also, that only one managerial decision was made to complete the discharge as charged in the information. See 42 C.J.S. Indictments and Informations § 169, p. 1127.

As stated in United States v. Universal C. I. T. Credit Corp., supra:

". . . [W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."

Similarly here, where one act is charged to have been done continuously if Congress wanted to make each day of the continuation of that act a separate offense, they should have said so in the statute itself. Actually, this Court has found no indication that this was the intention of Congress.

Defendant's motion to strike Counts 2 through 10, inclusive, is sustained.

It is so ordered.