**UNITED STATES of America,**
**Plaintiff,**

v.

**COLGATE–PALMOLIVE COMPANY,**
**Defendant.**

**Crim. A. No. T–CR–1955.**

United States District Court,
D. Kansas.

March 11, 1974.

---

Robert J. Roth, U. S. Atty., Roger K. Weatherby, Asst. U. S. Atty., for plaintiff.

Charles D. McAtee, Topeka, Kan., Robert Frederic Martin, New York City, for defendant.

## MEMORANDUM AND ORDER

TEMPLAR, District Judge.

This action was instituted on October 25, 1973, when an Information containing three counts was filed by the United States Attorney. Count I charged in substance that on or about September 19, 1972, the defendant unlawfully discharged refuse matter into the Kansas River, a navigable water of the United States, in violation of 33 U.S.C. § 407. Counts II and III of the Information charged identical offenses but on the successive days of September 20 and September 21, 1972. An omnibus hearing was afforded the defendant.

Thereafter, defendant filed a Motion to Suppress Evidence which it is alleged was obtained in violation of defendant's Fourth Amendment Rights. Defendant also has filed a Motion to Dismiss the Information in its Entirety or in the Alternative to Dismiss Two of the Three Counts.

Extensive briefs have been filed by the parties. Affidavits and counter-affidavits have been submitted. Copies of correspondence alleged to have relevance to the issues have been placed in the record and the Court has heard oral arguments on the points raised by the defendant.

The defendant has stated the substance of its objections in its Memorandum and Brief, as follows:

*Suppression Motions*

(1) Defendant moves to suppress use in this criminal case, in violation of the Fourth Amendment and E.P.A.'s representations and agreements, of all evidence derived from the search on defendant's premises by E.P.A. on September 19, 20 and 21, 1972, on the grounds such use exceeds and violates the representations and agreements that such evidence would be used in civil abatement proceedings, and that such representations and agreements were a material inducement to defendant's consent to that search.

(2) Defendant moves to suppress an analyses of samples of defendant's discharge on the dates in issue which were not completed "as soon as practicable" or "as soon as possible" as prescribed by E.P.A.'s own laboratory manual and regulations.

(3) Defendant moves to suppress all evidence based upon samples of which no portion was delivered to defendant for its own analysis, and all evidence

based upon E.P.A. sample-by-sample analysis not timely delivered to defendant, pursuant to the agreements in defendant's conditional consent to E.P.A. search on September 19, 20, and 21, 1972.

*Dismissal Motions*

(1) Defendant moves to dismiss counts 2 and 3 of the information under the rule of United States v. Hercules, Incorporated, 335 F.Supp. 102, 106–107 (D.Kan.1971), on the grounds that the three separate counts allege but one single offense.

(2) Defendant moves to dismiss the information in its entirety on the grounds that the only evidence available in support of any of the offenses charged was the fruit of an illegal search and seizure in violation of the Fourth Amendment and E.P.A.'s representations and agreements, and that its use in any criminal proceeding would be a breach of a prosecutorial representation and promise, and violates the Fifth Amendment to the United States Constitution.

(3) Defendant moves to dismiss the information in its entirety on the grounds that the discharge specified in the information and the Government's evidentiary contentions constitutes a flow from a sewer, passing therefrom into a navigable water in a liquid state, and hence, is not a violation of the Refuse Act.

(4) Defendant moves to dismiss the information in its entirety on the grounds that the Refuse Act and applicable regulations are so uncertain and ambiguous in their scope that their application to the discharge charged in the Government's information and evidentiary allegations confuses even the Government officers charged with enforcement and administration.

(5) Defendant moves to dismiss the information in its entirety on the grounds that the defendant was affirmatively misled into believing its discharge was not prohibited by actions and statements of officers of the Government agencies charged with enforcement and administration.

(6) Defendant moves to dismiss the information in its entirety on the grounds that the prosecution of this action will not materially advance the public interests intended to be protected by the Refuse Act as applied in furtherance of current water pollution abatement programs.

To understand the basis of defendant's objections to the prosecution, it appears from the record before the Court, the pleadings, the affidavits, the various exhibits and the oral arguments that defendant operates a manufacturing plant in Kansas City, Wyandotte County, Kansas. It manufactures or produces soap and related products. The plant is arranged so that substances from it are discharged at two different places. The substances allegedly discharged ultimately flow into the Kansas River. The present prosecution is based on the alleged discharge of substances into a manhole on defendant's property which are carried from that point to the river by the Osage Avenue Sewer and the Municipal Sewer and is not subjected to any form of treatment. At the date of the prosecution, no Refuse Act Permit had been obtained or applied for by defendant, though it appears that opportunity and invitation to do so had been afforded by the Environmental Protection Agency (E.P.A.).

It is quite obvious from the affidavits and exhibits in the record that defendant was well aware of the fact that industrial wastes discharged into a navigable stream, constituted a violation of 33 U.S.C.A. § 407. Their attention was challenged to this more than two years before the Information was filed, after it had ample opportunity to comply with the requirements of the statute and obtain a permit. That defendant was aware of the force and effect of the statute is evidenced by the letter of its Assistant General Counsel to the U. S. Army Engineers dated June 30, 1971 (Ex.D, Doc. 8).

From the exchange of correspondence submitted, the conclusion is inescapable that the legal department and independent counsel employed by defendant were well aware of the interpretation of the Rivers and Harbors Act pronounced by the United States Supreme Court in United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966), and the later decision of United States v. Pennsylvania Chemical Corp., 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973).

■ United States v. Pennsylvania Chemical Corp. provides much instruction as to the manner in which the provisions of Section 13 (33 U.S.C. § 407) of the Rivers and Harbors Act and related legislation designed to protect the water quality of the navigable waters of the United States should be applied. It is not necessary to recite here what was said in the *Pennsylvania Chemical* opinion other than to be reminded by the Supreme Court that "the history of this provision and of related legislation dealing with our free-flowing rivers 'forbids a narrow, cramped reading' of § 13."[1] This Court is bound to consider and interpret the provisions of this statute so as to carry out the purpose and intent of Congress in enacting this statute and the supplemental and related legislation on the subject designed to prevent the contamination of our water supplies.

In spite of all this knowledge, defendant continued its efforts to avoid the requirements of the statute and the regulations, and expressed great concern about the damage to its public image should adverse newspaper publicity develop. All this in face of an unequivocal response to defendant's inquiry that it was required to have a permit and that discharging its waste material into a municipal storm sewer does not excuse compliance (Ex. F, Doc. 8).

Following exchange of correspondence and telephone calls and personal interviews, arrangements were made for sampling of the effluent defendant was discharging into the municipal sewer and thence into the Kansas River. Permission was granted by defendant for personnel of the National Field Investigations Center—Denver to enter defendant's property and obtain the desired samples. It was agreed that the samples taken by NFIC–D would be shared with defendant, that reports of the tests made of the samples in the government laboratories would be furnished defendant, and that no press releases would be issued by the E.P.A. following the sample testing which might indicate violation of environmental laws by defendant.

Samples were taken on September 21, 22 and 23, 1972. Samples were shared on an equal basis. The samples were analyzed by NFIC–D and on June 20, 1973, a copy of the laboratory report was furnished defendant. In addition, permit application forms accompanied the report with the added admonition that "your discharges to the Osage Sewer and the Kansas River constitutes a probable violation of the Federal Water Pollution Control and Refuse Act." (Ex. C, Doc. 8.)

No application for permit was filed until November 14, 1973, three weeks after the present prosecution began.

1. *Defendant's Motion to Suppress.*

Defendant takes the position that in some way it was misled, or betrayed by artifice of government representatives into giving its permission for the taking of samples by government agents. This claim is based on a contention that the government in seeking permission represented that the samples were to be taken and used only in civil proceedings of abatement and no mention was made of possible criminal prosecution.

■ The alleged acts of defendant could create a form of nuisance. Literally, nuisance means annoyance, and in its broadest sense it is that which annoys or gives trouble or vexation, it is anything that works hurt, inconvenience

---

1. See United States v. Republic Steel Corporation, 362 U.S. 482, 491, 80 S.Ct. 884, 4 L.Ed.2d 903.

or damage. 66 C.J.S. Nuisances § 1, p. 727. The pollution of a waterway will constitute a nuisance. 93 C.J.S. Waters § 43, p. 688.

 The Court cannot conclude from the record before it that defendant was misled or victimized by the government in any way. It is apparent from the record before the Court that defendant understood that if it was not complying with the law, abatement proceedings, including criminal prosecution, would follow. I find no basis for concluding that the defendant was misled at any time by the government in all the negotiations that took place between defendant and the government representatives.

Defendant insists that the use of the word "abatement" in the correspondence and negotiations it had with government representatives prior to the granting of permission to take the samples on defendant's property led defendant to believe that "abatement proceedings" had reference only to civil proceedings. The Court cannot accept this interpretation advanced by defendant. The shorthand definition of abatement is "stop" or "put to an end." Whatever may have been the early English meaning of the term, it is well established that modern remedies available to agencies of the government to deal with those charged with failing to keep contamination and refuse from the streams and rivers of the country, include abatement by suits in equity for injunctions, actions at law for damages, and criminal prosecutions. 66 C.J.S. Nuisances § 102, p. 853, et seq.; 58 Am.Jur.2d Nuisances, § 98, p. 658. This has been settled law in this country since 1838 when it was declared in the case of Georgetown v. Alexandria Canal Co., 37 U.S. 91, 12 Pet. 91, 9 L.Ed. 1012, that "a public nuisance being the subject of criminal jurisdiction, the ordinary and regular proceeding at law is, by indictment or information, by *which the nuisance is abated* and the person who caused it may be punished." (Emphasis supplied.) The Court must conclude that the defendant was not de-

ceived. It was expertly advised at all times and no advantage was taken of it.

2. *Search and Seizure.*

Defendant attempts to raise an issue by claiming its Fourth Amendment rights were violated when government agents fraudulently induced it to consent to obtaining samples of substances discharged by defendant into sewers and by the sewer discharged into the river.

 It should be remembered here that the constitutional prohibition is against unreasonable searches. I find it difficult to characterize the obtaining of samples from the discharge pipes of defendant as an unreasonable search. Corporations can claim no equality with individuals in the enjoyment of right to privacy. The federal government allows them the privilege of engaging in interstate commerce and favors from the government often carry with them an enhanced measure of regulation. Law enforcement agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest. The gist of the protection is in the requirement, expressed in terms, that the disclosure should not be unreasonable. United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401; 68 Am. Jur., Searches & Seizures, § 11, p. 669. The conduct of government agents, disclosed by the record in this case, was well within their legitimate right to satisfy themselves that defendant's conduct was consistent with the law and the public interest. There was no unreasonable search here. Nor was there any trickery or deception involved. The defendant was informed that abatement of nuisances was the objective of the government. I find no basis for finding that such investigation was limited to civil proceedings.

 Defendant's contention that the Court should suppress all analysis of samples taken of defendant's discharge on dates in issue because not completed "as soon as practicable" or "as soon as possible" is without merit as is defend-

ant's contentions that analysis of samples were not timely delivered to it. There is no contention that defendant was deprived of making a daily examination of the substances it discharged into the sewer and I find from the record that it was afforded the opportunity to participate in taking the samples and that it was provided with the analysis made by the government. Defendant's contentions in this regard are exceedingly technical and form no basis for finding that it could have been prejudiced in the slightest.

### 3. *Dismissal Motions.*

■ 1. Consistent with this Court's ruling in United States v. Hercules, D.C., 335 F.Supp. 102, it is obliged to sustain defendant's motion to dismiss Counts II and III of the Information.

2. The motion to dismiss because of any breach of prosecutorial representation and promise is overruled for reasons noted above.

■ 3. The motion to dismiss because the discharge specified in the Information flows through a sewer and then passes into a navigable river in a liquid state is not a violation of the Refuse Act, is likewise overruled. Without unduly extending this Memorandum, the answer to this contention is found in United States v. Granite State Co., D.C., 343 F.Supp. 57, 61, where Judge Bownes observed that:

"I find further that the materials discharged by defendant are industrial wastes rather than 'refuse matter . . . flowing from streets and sewers and passing therefrom in a liquid state.' 33 U.S.C. § 407. The streets and sewers exception to the Act is narrowly construed to mean only domestic sewage. United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). All other discharges into navigable waters or their tributaries are prohibited, unless a permit has issued, regardless of whether actual obstruction to navigation results, United States v. Standard Oil Corp., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1965), and regardless of the effluent's effect upon the river. United States v. Pennsylvania Industrial Chemical Corp., 329 F.Supp. 1118 (W.D.Pa. 1971)."

I likewise find from the record that the materials discharged by the defendant were industrial wastes rather than "refuse matter flowing from streets and sewers and passing therefrom in a liquid state."

■ 4. This Court must overrule defendant's motion to dismiss because the Refuse Act and its regulations are uncertain and ambiguous. After reading United States v. Pennsylvania Chemical Corp., supra, this contention cannot be sustained. And see United States v. Steel Corp., D.C., 328 F.Supp. 354, aff'd 7 Cir., 482 F.2d 439; and see 411 U.S. 669, at which place it was cited by the United States Supreme Court.

5. Whether the defendant was misled by representatives of the government would, at most, be an issue of fact. At this stage of the proceedings the charges that defendant was misled by government agents are sharply denied by the government and cannot justify the sustaining of a motion to dismiss. This motion is overruled.

6. The motion to dismiss the Information in its entirety on grounds that prosecution of this action will not materially advance public interests must be overruled on the basis of the decisions of the appellate courts noted above.

Plaintiff's counsel will prepare, circulate and submit an order consistent with the findings and determinations made by the Court in this Memorandum of Decision.