**UNITED STATES of America,
Plaintiff,**

v.

**KENNEBEC LOG–DRIVING COMPA-
NY et al., Defendants.**

**Civ. A. No. 12–77.**

United States District Court,
D. Maine, S. D.

Aug. 7, 1975.

Peter Mills, U. S. Atty., Portland, Me., Walter Kiechel, Jr., Deputy Asst. Atty. Gen., Land and Natural Resources Div., Dept. of Justice, Washington, D. C., Thomas F. Bastow, Thomas C. Lee, and James R. Walpole, Dept. of Justice, Washington, D. C., Wm. Lunenburg, Charles Corkin, II, Boston, Mass., for plaintiff.

Wesley J. Marshall, Jr., E. P. A. Brighton, Mass., Vincent L. McKusick, Daniel E. Boxer, Loyall F. Sewall, Howard H. Dana, Jr., John W. Philbrick, Portland, Me., Roberts B. Owen, Covington & Burling, Washington, D. C., Norman M. Heisman, Ellis A. Horwitz, W. T. Peabody, Jr., Philadelphia, Pa., for defendants.

### OPINION AND ORDER
### OF THE COURT

GIGNOUX, District Judge.

This case is here on remand from the United States Court of Appeals for the First Circuit for further proceedings not inconsistent with the opinion of that Court, *United States v. Kennebec Log Driving Co.*, 491 F.2d 562 (1st Cir. 1973), vacating the judgment of this Court granting defendants' motion for summary judgment and dismissing the complaint. *United States v. Kennebec Log Driving Company*, 356 F.Supp. 344

(D.Me. 1973). The factual background is fully set forth in the prior reported opinions of this Court and of the Court of Appeals. A brief recital of the history of the litigation is, however, essential for an understanding of the issue which has been remanded for this Court's consideration.

## I

### History of the Litigation

Defendant Kennebec Log Driving Company has been engaged since 1835 in the driving of pulp logs down the upper Kennebec River to paper mills downstream. Defendants Scott Paper Company and Hudson Pulp and Paper Corporation have in the past utilized Kennebec Log Driving Company for this service, but at the present time Hudson Pulp and Paper Corporation no longer continues to do so. In the present action, the United States initially contended that these log-driving activities violate two provisions of the Rivers and Harbors Act of 1899, as amended, 33 U.S.C. § 401 et seq. Specifically, the original complaint charged: (1) that the placing of logs into the river and the construction and maintenance of log driving "booms" on the river, without prior authorization of the Secretary of the Army, create obstructions to navigation on a navigable water of the United States, in violation of Section 10 of the Act, 33 U.S.C. § 403; and (2) that the settling on the bottom of the river of water-soaked logs and of bark which has peeled from the logs in the course of the log drive, in the absence of a permit from the Secretary of the Army, constitutes an unlawful deposit of refuse matter in a navigable water of the United States, in violation of Section 13 of the Act, 33 U.S.C. § 407.[1] The government

seeks an injunction against further log driving and a court order requiring affirmative remedial action, including the removal of all sunken logs and bark from the Kennebec.

On cross-motions for summary judgment, this Court held that the Act of May 9, 1900, 33 U.S.C. § 410, exempted from the prohibitions of Sections 10 and 13 of the Rivers and Harbors Act log driving on rivers where log driving is the principal form of navigation and, since it was uncontested that the Kennebec is such a river, that defendants' log-driving activities were legal despite the failure to obtain any permits. The Court of Appeals agreed with this Court's determination that the 1900 Act exempted defendants' log-driving activities on the upper Kennebec (and its necessary incidents, including the use of logging booms) from the restrictions on obstruction to navigation found in Section 10 of the Rivers and Harbors Act,[2] but concluded that nothing in the 1900 Act exempted defendants' log-driving activities from the pollution control features contained in Section 13 of the Rivers and Harbors Act. Concurring with the findings of this Court that Section 13 is "facially applicable" to defendants' activities and that "peeled bark and sunken logs on the river bottom are deposits of 'refuse matter' within the meaning of Section 13," the Court of Appeals nevertheless remanded the case for a determination of

. . . whether there are certain deposits of material into navigable waters so intimately related to the actual conduct of navigation by water that despite the facial applicability of the statute it could not have been in the contemplation of Congress that it

---

1. It is conceded that the upper Kennebec is a navigable water of the United States within the purview of the Rivers and Harbors Act and that defendants have not applied for or obtained any permit or authorization from the Secretary of the Army under Sections 10 or 13 to conduct their log-driving activities.

2. The Court of Appeals also concurred with this Court's finding that the 1900 Act exempted log driving on rivers like the Kennebec from the complete ban on this activity (when conducted in such a way as to obstruct navigation) contained in Section 15 of the 1899 Act, 33 U.S.C. § 409.

apply in such instances. 491 F.2d at 570.

In response to plaintiff's motion for reconsideration, in which plaintiff suggested that the foregoing passage constituted an implicit ruling that Section 13 is inapplicable to deposits of refuse "intimately related to the actual conduct of navigation by water," the Court of Appeals made clear that it intended no such ruling and subsequently added the following footnote to this passage of its opinion:

> We mean to intimate no view as to whether or not any such interpretation of the language of the statute can be justified, nor, if it can, whether defendants can take advantage of it. *Id.* at 570 n. 27. *See United States v. Kennebec Log Driving Co.*, 491 F.2d 562, Memorandum and Order (1st Cir., 1973).[3]

In addition, the Court of Appeals volunteered certain comments as to some of the factual considerations to be taken into account in determining the appropriate relief in the event the Court finds a violation of Section 13. 491 F.2d at 571.

Both parties have now filed cross-motions for summary judgment on the issue of the applicability of Section 13 to defendants' log-driving activities. The government also asks that, if the liability issue is resolved against defendants, the Court summarily enter an order enjoining defendants from engaging in any further log driving on the Kennebec and requiring defendants to submit, within a reasonable time, for the Court's approval, a plan for the restoration of the Kennebec to its natural condition.

■ For the reasons to be stated, the Court holds that Section 13 of the Rivers and Harbors Act is applicable to defendants' log-driving activities on the Kennebec River, but that it would not be proper for the Court, on the present limited record, summarily to enter the injunctive order sought by the government.

## II

### *Applicability of Section 13*

The Court cannot accept defendants' argument, that because the settling of water-soaked logs and peeled bark on the river bottom is an inherent part of any log drive (and is thereby intimately related to the conduct of the log drive), Congress could not have contemplated that Section 13 of the Rivers and Harbors Act would apply to this activity. The Supreme Court has made entirely clear that no such restrictive interpretation of the language of the statute as that urged by defendants can be justified.

Section 13 prohibits, in pertinent part, the discharge into navigable waters of the United States of

> any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state,

unless prior permission is obtained from the Secretary of the Army under conditions prescribed by him. 33 U.S.C. § 407.[4] Defendants concede, as this

---

3. The Court of Appeals declined to consider the question of whether defendants' activities violate Section 13 because the point was not decided by this Court and was not "properly or fully presented" to the Court of Appeals. Memorandum and Order of December 19, 1973, *supra.*

4. Section 13 provides in full:

It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of

Court, with the concurrence of the Court of Appeals, has previously found, that "peeled bark and sunken logs on the river bottom are deposits of 'refuse matter' within the meaning of Section 13." The Supreme Court has found that "the 'serious injury' to our watercourses . . . sought to be remedied [by the Rivers and Harbors Act] was caused in part by obstacles that impeded navigation and in part by pollution," and that the term "refuse" as used in Section 13 includes *all* foreign substances. *United States v. Standard Oil Co.,* 384 U.S. 224, 228–29, 230, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966).

Thus, in *United States v. Standard Oil Co., supra,* the Supreme Court made clear that the word "refuse" in Section 13 includes all foreign substances and pollutants, with the single exception, provided in Section 13, of liquid sewage:

> The words of the Act are broad and inclusive: "Any refuse matter of any kind or description whatever." Only one exception is stated: "other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States." More comprehensive language would be difficult to select. The word "refuse" does not stand alone; the "refuse" banned is "of any kind or description whatever," apart from the one exception noted.
>
> . . .
>
> . . . . . . .
>
> That seems to us to be the common sense of the matter. The word "refuse" includes all foreign substances and pollutants apart from

those "flowing from streets and sewers and passing therefrom in a liquid state" into the watercourse. 384 U.S. at 229–30, 86 S.Ct. at 1430.

■ Any doubt that the term "refuse" as used in Section 13 "includes all foreign substances and pollutants" (other than liquid sewage) is dissipated by the Supreme Court's most recent discussion of Section 13's breadth of coverage in *United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 669, 93 S.Ct. 1804, 1814, 36 L.Ed.2d 567 (1973):

> Section 13 declares in simple absolutes that have been characterized as "almost an insult to the sophisticated wastes of modern technology" that "[i]t shall not be lawful" to discharge or deposit into navigable waters of the United States "any refuse matter of any kind or description whatever" except as permitted by the Secretary of the Army. (footnote omitted).

*See also Illinois v. City of Milwaukee,* 406 U.S. 91, 101 (1972); *United States v. Republic Steel Corp.,* 362 U.S. 482, 490–91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1960).

Following the Supreme Court's clear and unequivocal mandate in *Standard Oil,* the lower federal courts have consistently read Section 13 in accordance with its plain language and have declined to carve exceptions out of Section 13's all-inclusive coverage of "any refuse matter of any kind or description whatever." *See, e. g., United States v. Granite State Packing Co.,* 343 F.Supp. 57, 61 (D.N.H.), *aff'd,* 470 F.2d 303, 304 (1st Cir. 1972); *United States v. Esso*

any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: *Provided,* That nothing herein contained shall extend to, apply to, or prohibit the operations in connection with the improvement of navigable waters or construction of public works, considered necessary and proper by the United States officers supervising such improvement or public work: *And provided further,* That

the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful.

*Standard Oil Co.,* 375 F.2d 621, 623 (3rd Cir. 1967) ; *United States v. Hercules, Inc.,* 335 F.Supp. 102, 104–05 (D.Kan. 1971) ; *United States v. United States Steel Corp.,* 328 F.Supp. 354, 356–57 (N.D.Ind.1970) ; *United States v. Interlake Steel Corp.,* 297 F.Supp. 912, 915 (N.D.Ill.1969). *See also United States v. Pennsylvania Industrial Chemical Corp.,* 329 F.Supp. 1118, 1121 (W.D.Pa. 1971), *rev'd on other grounds,* 461 F.2d 468 (3rd Cir. 1972), *modified,* 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). Moreover, this Court has previously observed:

> [I]t is late in the day for defendants to argue for the restrictive interpretation which they now urge. It has long since been authoritatively settled that the Act prohibits *all* discharges of polluting matter (other than sewage) into navigable waters, regardless of its source or continuing nature and irrespective of its effect upon navigation. *United States v. Maplewood Poultry Company,* 327 F.Supp. 686, 688 (D.Me.1971) (citations and footnote omitted).

Defendants contend, however, that "since it would be unreasonable to infer that Congress contemplated that [Section 13] would outlaw all lawful modes of commercial navigation, [Section 13] should not be applied to log driving, which is undeniably a lawful form of navigation." The argument is that "in 1899 Congress was fully aware (a) that log driving was an important form of commercial navigation, and (b) that every log drive inevitably involved some degree of sinkage of logs and bark." From these two factual propositions—which the Court will accept as amply supported by the record—defendants say "it logically follows that in 1899 Congress must have realized that a legal prohibition against sinkage would be tantamount to a legal prohibition against log driving itself"—a result which could not have been in the contemplation of Congress, which in 1899 clearly contemplated that log driving would continue as a lawful, recognized form of commercial navigation.

■ The fundamental defect inherent in defendants' argument is that, as the Court of Appeals has made clear, Section 13 does not prohibit, but merely subjects to regulation, the discharge of refuse matter into navigable waters. In the language of the Court of Appeals,

> Section 13 does not operate as a complete prohibition on any activity. Discharge of refuse is illegal only if no permit is obtained beforehand. There is a vast array of human activity, particularly commercial activity, which requires prior governmental permission. But one does not in common sense terms think of such activity as prohibited. Rather, it is thought that it is limited or controlled. The very sweep of section 13 argues against the view that Congress could have meant it as a stark ban on all behavior encompassed within its broad terms. Instead, it was envisaged as a means of regulating and bringing under scrutiny actions which might threaten the well-being of the nation's waterways. . . . Congress, in retaining the applicability of section 13 to log driving, did not legalize log driving and at the same time prohibit its unavoidable side effects and so produce a contradictory result. It merely quite logically exempted it from the absolute ban of section 15 [5] while retaining the much more limited restriction produced by section 13. 491 F.2d at 568–69.

In light of this analysis, this Court must reject defendants' premise and the argument based thereon. To the extent Section 13 establishes a regulatory scheme for controlling pollution, there is no inherent conflict between Congress' desire to authorize log driving and at the same time to subject it to such restrictions as may be necessary to minimize the ad-

5. *See* n. 2, *supra.*

verse ecological impact of log driving upon navigable waters.[6]

## III

### Propriety of Summary Injunctive Relief

The United States asserts that, this Court having found that defendants' log-driving activities violate Section 13 of the Rivers and Harbors Act, it should summarily issue an injunction flatly prohibiting all log driving on the Kennebec until such time as defendants obtain from the Environmental Protection Agency a permit for further log-driving operations.[7] In addition, the government asks for a mandatory order directing defendants to submit a plan "for the restoration of the Kennebec River to its natural condition."

The government's request for immediate injunctive relief ignores the admonition of the Court of Appeals that if this Court finds a violation of Section 13, "it will then be faced with the question of appropriate relief," and that any equitable decree, either affecting future log driving or requiring the removal from the river bottom of sunken logs and peeled bark, must be framed in the light of a series of factual considerations as to which no proof has yet been offered. 491 F.2d at 571. Insofar as prospective relief is concerned, such factual consid-

erations will include the availability of a permit from the Environmental Protection Agency; the extent to which any equitable decree curtailing future log driving should require, at most, only such changes in defendants' present operations as may be necessary to bring them into compliance with present national policy as exemplified in the 1972 Amendments to the Federal Water Pollution Control Act; and the extent to which the economic and practical burdens which an abrupt termination of the log drive would cause may outweigh any harm which might be done to the river during the brief period between now and October 1, 1976, when Scott has agreed to terminate its log drives on the Kennebec and the Maine Legislature has decreed that log driving on all Maine rivers must cease.

In determining what, if any, retrospective relief will be appropriate, the factual questions to be canvassed will require consideration of such questions as the extent to which the current condition of the Kennebec River is attributable to defendants' log-driving activities, as opposed to other pollutant discharges (such as municipal sewage) and the log-driving activities of other present or former members of the Kennebec Log Driving Company during the last 140 years; the extent to which efforts to remove sunken logs and bark deposits

6. The flaw in defendants' position is also present in their assertion that the government's interpretation of Section 13 would necessarily render unlawful the unavoidable discharges of oil from properly operating vessels, thereby bringing to a halt all navigation by ship, a result clearly not intended by Congress. As the government points out, discharges from properly operating vessel engines have been exempted *by regulation* from the otherwise complete coverage of the oil spill provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1161 (1970) [now recodified as 33 U.S.C. § 1321 (1974 Supp.) as amended in 1972], for the very reason that such an exception was "necessary and proper if there is to be traffic upon the seas and inland navigable waters." *United States v. Boyd*, 491 F.2d 1163, 1169 (9th Cir. 1973).

7. The authority of the Secretary of the Army to issue permits under Section 13 of the Rivers and Harbors Act terminated on October 18, 1972 when Congress enacted the Federal Water Pollution Control Act Amendments of 1972, Pub.L.No. 92–500, 86 Stat. 816, comprehensive legislation providing for national water quality standards and for a federal permit program relating to the discharge of pollutants into navigable waters. Section 402 of the 1972 Act, 33 U.S.C. § 1342, prohibits further issuance of permits under Section 13 of the Rivers and Harbors Act and designates the Administrator of the Environmental Protection Agency as the exclusive authority to permit the discharge of pollutants into navigable waters. *See Generally United States v. Pennsylvania Industrial Chemical Corp., supra,* 411 U.S. at 657 n. 2, 658 n. 7, 659 n. 9, 93 S.Ct. 1804, 36 L.Ed.2d 567.

from the river botton might cause greater environmental damage by disturbing the riverbed than will result from their continued presence on the bottom; and the extent to which defendants may have reasonably relied on long-standing government action or inaction in conducting their log-driving activities since passage of the 1899 Act.

While the Court of Appeals did not specifically mention all of the foregoing factors, that court expressly recognized that "the burden of removing all of the logs which may have sunk to the bottom of the river in seventy-three years is obviously an extremely heavy one," 491 F. 2d at 571, and noted that "[t]he requirements of fairness invoked by the Court in *United States v. Pennsylvania Industrial Chemical Corp., supra,* in gauging the propriety of criminal sanctions, may also apply when extreme hardship may be caused by an equity decree in this type of case." *Idem.* In effect, the Court of Appeals has directed this Court, having reached the issue of relief, to address itself to a variety of complex and technical factual issues which will require a more comprehensive record than is presently available in order for the Court to frame an appropriate equitable decree. *Cf. United States v. Rohm & Haas Co.,* 500 F.2d 167, 177 (5th Cir. 1974); *United States v. Stoeco Homes, Inc.,* 359 F.Supp. 672 (D.N.J.), *vacated and remanded,* 498 F.2d 597, 611–12 (3rd Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *United States v. Ira S. Bushey & Sons, Inc.,* 363 F.Supp. 110, 121 (D. Vt.), *aff'd,* 487 F.2d 1393 (2d Cir. 1973), *cert. denied,* 417 U.S. 976, 94 S. Ct. 3182, 41 L.Ed.2d 1146 (1974); *United States v. Kentland-Elkhorn Coal Corp.,* 353 F.Supp. 451, 455 (E.D.Ky. 1973).

### IV

Defendants' motion for summary judgment is denied. Plaintiff's motion for summary judgment, to the extent it seeks a declaration that Section 13 of the Rivers and Harbors Act of 1899 is applicable to defendants' log-driving activities on the Kennebec River, is granted. Plaintiff's motion for summary judgment, insofar as it seeks summary injunctive relief, is denied. The action will be assigned for a further pretrial conference as soon after September 1, 1975 as the Court's calendar permits for the consideration of such further proceedings as may be necessary to enable the Court to frame an equitable decree granting appropriate relief.

It is so ordered.

### CERTIFICATE

In accordance with 28 U.S.C. § 1292(b), I hereby certify that in my opinion the foregoing order involves a controlling question of law as to which there is substantial ground for difference of opinion (the controlling question of law being as to whether or not Section 13 of the Rivers and Harbors Act of 1899 applies to defendants' log-driving activities on the Kennebec River) and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.