UNITED STATES of America

v.

**Beddy G. CURY, Appellant.**

No. 13883.

United States Court of Appeals Third Circuit.

Argued Sept. 17, 1962.

Decided Feb. 5, 1963.

338

William Rossmoore, Newark, N. J.
(Koenigsberg & Rossmoore, Newark, N.
J., Stanley Geller, New York City, on the
brief), for appellant.

Sanford M. Jaffe, Newark, N. J. (U.
S. Attorney's office) (David M. Satz, Jr.,
U. S. Atty., Newark, N. J., Jerome D.
Schwitzer, Asst. U. S. Atty., on the
brief), for appellee.

Before MARIS, McLAUGHLIN and
GANEY, Circuit Judges.

GANEY, Circuit Judge.

A jury found defendant, Beddy G.
Cury, guilty under a three count indict-
ment, filed December 19, 1960, charging
him with having knowingly and fraudu-
lently made false oaths in relation to a
bankruptcy proceeding in violation of §
152 of the Criminal Code, Title 18 U.S.C.
The District Court committed defendant
to the custody of the Attorney General
for a term of punishment for a period of
six months on each count of the indict-
ment, the sentence to run concurrently
and not consecutively. He has appealed
from the denial by the District Court of
his motions for judgments of acquittal
and a new trial.

Each count charges a separate viola-
tion of § 152. The first charges that at
a meeting of his creditors on October 2,
1958, in Newark, New Jersey, the defend-
ant, while under oath, knowingly and
falsely answered, "No, sir." to the ques-
tion: "Do you have any assets or prop-
erty of any kind in your possession or un-
der your control which you have not
turned over to me as Trustee." The sec-
ond accuses him with knowingly and
falsely answering "No" in his Statement
of Affairs accompanying his Petition in
Bankruptcy to the question: "What
property do you hold in trust for any
other person?" And the third charges
him with knowingly and falsely answer-
ing "None" in his Statement of Affairs
accompanying the same Petition in Bank-
ruptcy to the question: "What property
have you transferred or otherwise dis-
posed of during the year immediately
preceding the filing of the original peti-
tion herein?" The Statement of Affairs
was signed and sworn to by defendant in
New Jersey, on June 13, 1958, before a

person authorized to take affidavits in that State.

■ At the outset defendant asserts that the indictment is insufficient because there is no allegation in any of the counts of what property it is claimed he had (1) in his possession or control, (2) in trust for any other person, or (3) transferred or otherwise disposed of during the year immediately preceding the filing of his Petition in Bankruptcy. It is elementary that each count of an indictment must charge an offense under the Criminal Code, and this rule is not just a matter of form.[1] In our opinion each count charges a crime under § 152. Flynn v. United States, 172 F.2d 12 (C.A. 9, 1949), cert. denied 337 U.S. 944, 69 S.Ct. 1499, 93 L.Ed. 1747. Despite this fact, the indictment was subject to attack at the proper time.[2] However, defendant did not object to the sufficiency of the indictment in the trial court, nor has he shown any prejudice by reason of the failure of the indictment to specifically set forth or to name the property involved. Under these circumstances he must be deemed to have waived his objection to the wording of the indictment.

■ Defendant's second point is that the crime of false swearing in connection with a proceeding in bankruptcy under § 152 is the equivalent of the crime of perjury under § 1621 of the Criminal Code, and is, therefore, subject to the same stringent rule of proof usually required in perjury cases. It has been held that the "two witness" rule does not apply to proof of an offense under § 152. United States v. Marachowsky, 201 F.2d 5 (C.A.5, 1953), cert. denied 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384. However, we need not so decide here, because the rule has no applicability where the defendant, as in this case, admits the transactions or the existence of the documents which the prosecution desired to

establish. Hammer v. United States, 271 U.S. 620, 627, 46 S.Ct. 603, 70 L.Ed. 1118 (1926); United States v. Margolis, 138 F.2d 1002, 1004 (C.A.3, 1943); Perkins on Criminal Law (1957), p. 393.

■ Defendant's third complaint is that the evidence was insufficient to support the charge under count one to show that his answer to the question (a) was false, (b) was knowingly false, and (c) that it was made with a criminal intent. We think the evidence was sufficient.

Defendant had been president and principal stockholder of Beddy G. Cury, Inc., a holding company which had filed a petition under Chapter XI of the Bankruptcy Act in December of 1956. Pursuant to a proposed arrangement, he personally agreed to guarantee the corporate obligations. The holding company was unable to meet its obligations under the plan, and in December of 1957 it was forced into bankruptcy. On June 16, 1958, he filed a voluntary petition in bankruptcy, listing $2,135,878.26 in debts and only $1,110.00 in assets. Annexed to his petition was the verified Statement of Affairs as required by § 7, sub. a(9) of the Bankruptcy Act, 11 U.S.C.A. § 25, sub. a(9). Because of his answer to questions Nos. 6 and 10 in the Statement of Affairs, and his response to a question put to him at a meeting of his creditors on October 2, 1958, he was indicted on February 19, 1960, and tried on October 10, 1961. At the trial before Circuit Judge William F. Smith, specially designated to sit in the United States District Court for the District of New Jersey, the following facts were brought out.

Since 1952, defendant had bought and sold securities in his own name. He had an account with Filor, Bullard & Smyth of New York City, a stock brokerage firm. In August of 1957, he, for the first time, began buying stock in his name as custodian for his two minor children,

---

1. Rule 12(b) (2) of the Federal Rules of Criminal Procedure provides, in part, that "the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

2. See Bartlett v. United States, 106 F. 884, 885 (9 Cir., 1901) and United States v. Lynch, 11 F.2d 289, 301 (W.D.La. 1926).

Bruce G. and Elaine, who were living in New Jersey. At his request, around August 22, 1957, Filor, Bullard & Smyth purchased one thousand shares of Two Guys from Harrison, Inc., stock. Five hundred of them were issued in the name of defendant as custodian for Elaine, under P.L. 1955, Chapter 139 of the Laws of New Jersey. At the same time, the other 500 shares were similarly issued in the name of defendant as custodian for Bruce. The ten certificates representing these shares were delivered to the defendant. In the latter part of December, 1957, twenty more shares of stock in the same corporation were issued to defendant as custodian. Ten for Elaine and ten for Bruce.

On February 14, 1958, defendant deposited his personal check in his broker's account, which then had a zero balance, and ordered his broker to buy 500 shares of Two Guys stock. Four days later, he deposited three additional checks totaling $630 to cover the purchase price of the stock which amounted to $3,630. At that time, he instructed his broker to have the shares registered in his name as custodian for his children, 300 for Bruce, and 200 for Elaine. The five certificates representing the 500 shares were delivered to defendant on or about February 26.

On May 1, 1958, he, through his account at Filor, Bullard & Smyth, ordered the purchase of 100 shares of Wyandotte Worsted Company stock. The stock certificate was issued in his name as custodian for Elaine. The cost of the stock was $712 and was paid by him with cash in the amount of $602.65 and a dividend check of $109.35 from Two Guys. The certificate representing the 100 shares was delivered to him on May 12, 1958.[3]

On June 20, he ordered his broker to sell 400 shares of Two Guys stock, and on July 8, he surrendered four certificates representing those shares. On July 25,

nine days after he filed his Petition in Bankruptcy, he forwarded to his broker the certificate representing the 100 shares of Wyandotte Worsted Company stock which had been sold through his account on July 7. On August 25, he surrendered another 100 shares of Two Guys stock. These shares were sold through Elaine's custodial account by the broker.

As a result of defendant's transactions, there were outstanding, as of October 2, 1958, the date he was examined under oath at a meeting of his creditors, 1,020 shares, including the 500 obtained in February of 1958, of Two Guys stock in the name of defendant as custodian for his two minor children.

On November 20, 1958, he surrendered 300 shares of that stock to his broker for sale, and in March of 1959, he parted with the remaining 720. Each certificate surrendered bore the endorsement of defendant as custodian for his minor child. There were no notations on the certificates representing the 1,020 shares that they had been sold or assigned to another between the dates of issuance and the dates they were submitted for sale. Nor did the records of Bankers Trust Company of New York, transfer agents for Two Guys, indicate that the certificates in question had been transferred to anyone else during those periods. The proceeds from the sale of the stock were used to purchase other stock by defendant as custodian for his children. Defendant claimed that in 1960 he hypothecated the custodial stock for a loan of $8,000 which he invested in Thrift Stores, Inc., an enterprise started by him in December, 1958, six months after he had been discharged from bankruptcy. Although the Government, in its case in chief, did not show by direct evidence the location of the Two Guys stock certificates as of October 2, 1958, the defendant, on cross-examination, admitted that he did not part with the stock until

3. This transaction is adverted to because it was the Government's contention at the trial that the question put to defendant on October 2, 1958, which we find unnecessary to answer, related back to the time defendant's petition in bankruptcy was filed.

March of 1959.[4] From this evidence the jury could conclude that the answer to the question put to him on October 2, 1958, was false, i. e., that he did have "in his possession or under his control" stock certificates which he had not turned over to the Trustee. The Uniform Model Gifts to Minors Act did not prevent this conclusion.[5]

As for his contention that there was no showing that he knew his answer, to the question put to him on October 2, 1958, was false, the evidence demonstrates that he was the head of a large corporation that had extensive dealings and that he was a businessman of wide experience. This evidence afforded a basis for the jury's conclusion that he

---

4. Notes of testimony, p. 124.

5. See Sections 1(a), 2 and 3(a, b, d) of the Uniform Model Gifts to Minors Act, which is in force in New Jersey. N.J.S.A. 46:38–1 to 12. The mentioned sections provide:

"46:38–1. *Gift of securities to minors; registered form; bearer form*

"Any adult person may make a gift of securities to a minor in the following manner:

"(a) Securities, if in registered form, shall be registered by the donor in his own name or in the name of any adult member of the minor's family or in the name of any guardian of the minor, followed by the words 'as custodian, for ...................., a minor, under P. (name of minor) L. 1955, c. ...... of the laws of New Jersey,' and the securities shall be delivered to the person in whose name they are thus registered as custodian. If the securities are thus registered in the name of the donor as custodian such registration shall of itself constitute the delivery required by this act.

\*　　\*　　\*　　\*　　\*

"46:38–3. *Powers and duties of custodian*

"(a) \* \* \* To the extent that property held by the custodian and the income thereof is not so expended, it shall be delivered or paid over to the minor upon the minor's attaining the age of 21 years, and in the event that the minor dies before attaining the age of 21 years it shall thereupon be delivered or paid over to the estate of the minor.

"(b) \* \* \* or hold part or all of the same in 1 or more bank accounts or in 1 or more accounts in any savings and loan association of this State, or any Federal savings and loan association, having its principal office in this State, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation in his name as such custodian; he may vote in person or by general or limited proxy with respect to any securities held by him; he may consent directly or through a committee or other agent to the reorganization, consolidation, dissolution or liquidation of any corporations, the securities of which may be held by him, or to the sale, lease, pledge or mortgage of any property by or to any such corporation.

"(c) In addition to the foregoing rights, powers and duties with respect to any securities or other property held by the custodian, the custodian, in his name as such custodian, shall have all the powers of management which a guardian of the property of the minor would have.

"(d) The custodian may execute and deliver any and all instruments in writing which he may deem advisable to carry out any of the foregoing powers. No issuer of securities, transfer agent, registrar or bank or other person acting on the instructions of any person purporting to be a custodian or donor shall be responsible for determining whether any person has been duly designated as a custodian under this act, or whether any purchase, sale or transfer to or by any person as custodian is in accordance with or authorized by this act, or shall be obliged to inquire into the validity under this act of any instrument or instructions executed or given by a person purporting to act as custodian or donor, or be bound to see to the application by any person purporting to act as custodian of any money or other property paid or delivered to him. All registered securities held by the custodian from time to time shall be registered in his name followed by the words 'as custodian for ..............., a minor under P.L. (name of minor), 1955, c. ....' All other property held by the custodian for the minor under the authority of this act shall be kept separate and distinct from the custodian's own personal funds and property and shall be maintained at all times in such a manner as to identify it clearly as the minor's property held by the custodian under the authority of this act. L.1955, c. 139, p. 628, § 3, as amended L.1958, c. 19, p. 52, § 1.

"Effective April 22, 1958."

knew full well what the words "in your possession and control" meant.

In connection with this claim that evidence of any criminal intent on his part under count one was lacking, defendant raises an objection to the "third" part of a portion of the trial judge's charge to the jury, which is as follows:

"You are instructed that the burden is upon the Government to prove, first that an answer given by the bankrupt was false; second, that the answer when given was known by the bankrupt to be false; and, third, that the false answer was accompanied by a wilful intent to defeat and defraud creditors."

■ The basis for the objection here is that this portion of the charge allowed the jury to speculate over the whole range of what might be a fraudulent transfer within the meaning of the Bankruptcy Act. To begin with, defendant made no objection to the charge, let alone a specific objection to that portion of the charge just quoted, as Rule 30 of the Federal Rules of Criminal Procedure requires that the matter counsel objects to should be stated distinctly and the grounds given therefor. Moreover, that portion of the charge was more favorable to him than he was entitled to. All that was necessary for the Government in order to meet its burden on this score was to show that the defendant answered "No, sir." to the oral question for the purpose of forestalling the Trustee from inquiring into his transactions in the 1,020 shares of Two Guys stock, irrespective of whether the transaction was in fraud of his creditors. The trial court later amended this portion of the charge to set forth that minimum requirement. This was done in answer to a written question submitted by the jury.[6] In ad-

dition, there was evidence produced at the trial from which the jury could have concluded that defendant's answer to the oral question was for the purpose of defeating or defrauding his creditors, as indicated by (1) the fact that he obtained the stock in question at a time when he was insolvent, and (2) he testified that he had obtained money from his children's bank accounts prior to opening the custodial accounts and that he felt obligated to return the money to them as soon as possible.[7]

The eliciting of testimony from defendant to the effect that he used the loan, obtained from the hypothecation of custodial securities, in his own business approximately two years after October 2, 1958, was not erroneous because of remoteness. Defendant's counsel made no objection to this line of questioning. In fact he asked the trial judge to let defendant explain what happened to the proceeds from the stock. Moreover, under the circumstances, the later transactions were not so remote in time that they may be considered as having no probative value. See 22A C.J.S. Criminal Law, § 638.

■ Complaints similar to those under count one are made by defendant regarding the other counts. In the absence of the introduction of evidence under those counts which affected the substantial rights of defendant, where the sentences on all counts, as here, are the same and are to run concurrently, a conviction upon any count, if valid, will alone sustain the judgment. Lawn v. United States, 355 U.S. 399, 78 S.Ct. 311, 2 L.Ed. 2d 321; Whitfield v. State of Ohio, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778; United States v. Cioffi, 253 F.2d 494 (C. A.2, 1958). In our case there was a complete absence of the admission of any

---

6. In part, the trial judge's answer to the jury's question is as follows: "You are instructed, ladies and gentlemen, that if the transfer of the stock or the money purchasing the stock had been disclosed in the Statement of Affairs and if thereafter, at the hearing, the custodianship of

the stock had been disclosed by the bankrupt, then and in such case the trustee would have been permitted to inquire further into the circumstances surrounding the transfer."

7. Notes of testimony, p. 133.

evidence that could have affected his substantial rights.

The trial court did not abuse its discretion in denying the motion for a new trial.

The judgment will be affirmed.