UNITED STATES of America, Appellee,

v.

Franklin D. LAMPLEY, Appellant.

No. 76–2502.

United States Court of Appeals,
Third Circuit.

Submitted Oct. 4, 1977.

Decided Feb. 10, 1978.

Thomas Colas Carroll, Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for appellant.

David W. Marston, U. S. Atty. by Walter S. Batty, Jr., Richard J. Stout, Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before GIBBONS and WEIS, Circuit Judges, and MEANOR,* District Judge.

## OPINION OF THE COURT

MEANOR, District Judge.

Appellant, Franklin D. Lampley, appeals from a judgment of conviction entered in the United States District Court for the Eastern District of Pennsylvania on one count of making a threatening interstate telephone call in violation of 18 U.S.C. § 875(c),[1] one count of making anonymous harassing interstate telephone calls in violation of 47·U.S.C. § 223(1)(B) and seven counts of making harassing interstate telephone calls in which conversation ensued in violation of 47 U.S.C. § 223(1)(D).[2] We affirm appellant's conviction on all counts, but we discuss only appellant's contentions as to the constitutionality and construction of 47 U.S.C. § 223 and the propriety of a lesser-included offense charge in conjunction with an instruction on 18 U.S.C. § 875(c).

### I

On February 13, 1975, a federal grand jury in the Western District of Wisconsin returned a two-count indictment[3] charging appellant with making a threatening telephone call to Richard Hatlen on August 5, 1974, a felony, in violation of 18 U.S.C. § 875(c) and with making repeated harassing interstate calls between May 5, 1974 and February 9, 1975, a petty offense, in violation of 47 U.S.C. § 223(1)(D). On appellant's motion, the case was transferred from the Western District of Wisconsin to the Eastern District of Pennsylvania on May 20, 1975.

On June 17, 1975, the appellant filed a motion to dismiss count II of the indictment as insufficient and vague. The Government agreed that count II was inartfully drawn. Accordingly, on August 26, 1975, a 16-count superseding indictment was returned by a grand jury in the Eastern District of Pennsylvania charging violations of 18 U.S.C. § 875(c) and 47 U.S.C. §§ 223(1)(B) and (1)(D). Specifically, counts I, II and V charged threatening calls to Richard Hatlen in violation of 18 U.S.C. § 875(c). Count IV charged a threatening call to the U.S. Attorney in the Western District of Wisconsin, also in violation of § 875(c). Counts III, VI, VII, VIII, IX, X, XII, XIII, XV and XVI charged repeated harassing calls to Richard and Elizabeth Hatlen in violation of 47 U.S.C. § 223(1)(D). Count XIV charged repeated harassing calls to Mrs. Mary Simmons, contrary to § 223(1)(D). Count XI charged anonymous

---

* H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

1. 18 U.S.C. § 875(c) provides:

   Whoever transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. 47 U.S.C. § 223 provides:

   Whoever—
   (1) in the District of Columbia or in interstate or foreign communication by means of telephone—
   (A) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent;
   (B) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number;

   (C) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or
   (D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number; or
   (2) knowingly. permits any telephone under his control to be used for any purpose prohibited by this section, shall be fined not more than $500 or imprisoned not more than six months, or both.

3. This indictment represented the second time that criminal charges have been brought against appellant for misuse of the telephone. On July 7, 1971, the United States Attorney for the Western District of Wisconsin filed a criminal information against him charging conduct similar to that which is the subject of the instant case. Upon Lampley's agreement to cease making harassing calls and to undergo psychiatric treatment, the United States Attorney caused that information to be dismissed on September 5, 1972.

calls to the Hatlens in violation of 47 U.S.C. § 223(1)(B).

On October 30, 1975, counts I, II and III were dismissed for lack of a speedy trial. On March 3, 1976, the court granted the Government's motion pursuant to 18 U.S.C. § 4244 for a competency determination. On March 30, 1976 on the basis of a psychiatrist's report, the trial judge found Lampley competent to stand trial.

On July 23, 1976, after numerous postponements of the trial date at the request of the defense, the case proceeded to trial on counts IV through XVI of the indictment. Judgments of acquittal were granted as to counts IV, X, XII and XIII. On August 2, 1976, the jury returned guilty verdicts on the remaining counts, convicting Lampley on count V, a felony count, and counts VI, VII, VIII, IX, XI, XIV, XV and XVI. On September 9, 1976, Judge Becker sentenced the appellant to a five year term of probation on count V and like concurrent probationary terms on the remaining counts.

## II

The facts in this case constitute a bizarre tale of a romantic obsession. In 1951 in Nashville, Tennessee, the appellant briefly dated Elizabeth Hatlen before her marriage, their relationship terminating after a few weeks. The relationship had an enduring effect on the appellant, however, for in the summer of 1969 he called Elizabeth in Evansville, Wisconsin, where she lived with her husband Richard Hatlen and their four children. The appellant told her that he could not get her out of his mind, that he had spent a rough 17 years for which she was at fault and that he wanted to see her again. When she refused, he told her that he would make life miserable for her. Thereupon, the appellant launched from his home in Pennsylvania a telephonic assault on the Hatlens and others, unleashing a barrage of incessant and subsequently abusive telephone calls which continued, with periods of intermission, into 1975. During the period in question on this appeal, May through December 1974 and January

through March 1975, the appellant made an average of 10–12 calls per week to the Hatlen home.

Lampley would often make operator assisted calls, and while the operator placed the call, he would shout obscenities over the operator's voice or ask "Are you ready to talk," or "Can I speak to my daughter, Judy." In addition, Lampley would place collect calls to "my wife, Elizabeth Lampley," and when Elizabeth Hatlen refused to accept charges, she could hear the appellant speaking in the background.

Richard Hatlen, Elizabeth's husband, and Mary Simmons, Elizabeth's mother, also became the focus of the appellant's spleen. On August 5, 1974, the appellant placed a call to the Hatlens wherein Richard heard the appellant shout over the operator, "I have been hired by your wife to kill you." This threat constituted the basis of appellant's conviction on count V.

In 1974 and 1975, Mrs. Simmons received a multitude of harassing calls from the appellant at her home in Hollow Rock, Tennessee. On January 9, 1975, Lampley called her at least three times—1:30 a. m., 2:05 a. m. and 2:10 a. m. Each time Lampley spoke a few words and Mrs. Simmons, recognizing his voice, hung up. After the third call, Mrs. Simmons took her phone off the hook. This series of calls was the basis of appellant's conviction under count XIV.

Taking the stand in his own defense, Lampley testified that after 1971 he had only made one call to the Hatlens, the one to Richard on August 5, 1974, but he denied threatening Richard's life. The thrust of Lampley's defense was that his prosecution was the result of a plot on the part of the Hatlens, the United States Attorney, the Department of Justice, the Federal Bureau of Investigation, and the United States District Court to silence his activities in exposing corruption in government.

## III

The appellant has raised several questions as to the constitutionality and construction of 47 U.S.C. § 223. First, he

asserts that § 223(1)(D) is violative of the First Amendment because it fails to specify that the requisite ensuing conversation must contain harassing language. Without such requirement, he reasons, one may be convicted for a mere attempt to communicate in violation of the right of free speech, and, therefore, the court's failure to charge that harassing conversation is a requirement to conviction is ground for reversal.

The appellant has not claimed, nor could he successfully do so, that it is beyond the power of the Congress to impose criminal sanctions· on the placement of interstate telephone calls to harass, abuse or annoy. Not all speech enjoys the protection of the first amendment, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and in enacting § 223 the Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives. *See* H.R.No.1109, Interstate and Foreign Commerce Committee, U.S.Code Cong. and Admin.News, p. 1915 (1968); *United States v. Darsey*, 342 F.Supp. 311 (E.D.Pa.1972).

The appellant argues that § 223(1)(D) must be read to require the use of harassing language to avoid the unconstitutional criminalization of mere attempts to communicate. However, that section requires that punishable conduct be made with the intent "solely to harass any person at the called number." Whether or not the actual conversation contains harassing language may be relevant to the question of intent. However, the nature of the conversation can have no bearing on the constitutionality of the section since its narrow intent requirement precludes the proscription of mere communication.

■ Since harassing conversation is not necessary to save the section from unconstitutionality, and since the proscription of calls intended to harass in which no abusive language is .used is consistent with both congressional intent and the language of § 223(1)(D), the district court properly refused appellant's request to charge on the necessity of harassing language.

■ The section's specific intent requirement renders unconvincing appellant's second claim that §§ 223(1)(B) and (D) are unconstitutionally vague. It has long been true that

[t]he Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. . . . [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Screws v. United States*, 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945). The appellant cannot claim confusion about the conduct proscribed where, as here, the statute precisely specifies that the actor must intend to perform acts of harassment in order to be culpable.

■ Next the appellant raises questions as to the meaning of the element of ensuing conversation under § 223(1)(D). He asserts that the conversation requirement cannot be met unless the caller speaks and the party called verbally responds. Thus, appellant contends that on an operator-assisted call, if only the operator speaks, there has been no ensuing conversation within the meaning of § 223(1)(D), and that it was error for the trial court to refuse appellant's charge [4] to this effect.

**4.** The text of the requested charge is as follows:
In determining whether "conversation ensued" during each of the repeated telephone calls in each count, you must find that Mr. Lampley himself spoke during the telephone call and that he was heard by some person at the called number.

I further instruct you that any words spoken by an operator in attempting to make the call would not constitute "conversation ensuing" during a repeated telephone call. So for example, if an operator said "Collect call from Mr. Lampley" or "Person to person call from Mr. Lampley" or other similar words, and the per-

It is clear that when the operator places a call at the behest of the caller, the operator is acting as the agent of the caller for purposes of contacting the party called. Where the caller acts with sole intent to harass, the words spoken through his agent, the operator, are readily attributable to him. It was not the intention of Congress to permit the person who abuses telephonic communication to evade liability under § 223(1)(D) by the device of placing only operator-assisted calls. Nor is it necessary, as appellant suggests, that the call recipient verbally respond to the operator's words. Communication sufficient to constitute "conversation" occurs when the operator speaks to the listening recipient.

▮▮▮ In his final point directed to the construction of § 223(1)(D), the appellant raises the issue of what constitutes a single offense of "repeated telephone calls." He urges that the indictment charging many counts of repeated harassing calls to the Hatlens was multiplicitous, reasoning that the conduct charged in separate counts was of a repetitious and continuing nature, and since the statute prohibits "repeated telephone calls," all such conduct should have been the subject of a single count. For this reason the appellant argues that the trial court erred in denying his motion to require the government to elect from among the § 223(1)(D) counts.

The conclusion that the indictment was multiplicitous in charging appellant with more than one § 223(1)(D) offense arising out of his calls to the Hatlens would result in a modification of the judgment below to reflect not seven but two convictions for violation of § 223(1)(D)—one involving the calls to the Hatlens and one arising out of the calls to Mrs. Simmons. Lampley's sentences were all concurrent and under the concurrent sentence doctrine we may exercise our discretion not to rule on the issue of

multiplicitousness. Under that doctrine an appellate court may avoid the resolution of legal issues affecting less than all of the counts in an indictment where at least one count has been upheld and the sentences are concurrent. *Hirabayashi v. United States*, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); *United States v. Cury*, 313 F.2d 337, 342 (3d Cir. 1963). The doctrine clearly involves a matter of discretion, *Barnes v. United States*, 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), and should not be applied where there is a significant risk of greater adverse collateral consequences from multiple convictions. *United States v. Daley*, 564 F.2d 645, 647 n.2 (2d Cir. 1977). That the doctrine has continuing vitality seems clear. It has very recently been applied by the Supreme Court, *Barnes v. United States, supra*,[5] and only a short while ago was recognized by this court without any question as to its validity. *United States v. Keller*, 512 F.2d 182, 185 n.8 (3d Cir. 1975).[6]

Under the judgments below, Lampley stands convicted of a felony in violation of 18 U.S.C. § 875(c); one petty offense in violation of 47 U.S.C. § 223(1)(B) and seven petty offenses in violation of 47 U.S.C. § 223(1)(D). Because we can see no appreciable risk of greater collateral consequences flowing from eight rather than three petty offense convictions, we choose to exercise our discretion under the concurrent sentence doctrine and do not reach the issue of multiplicitousness. We add that appellant was not prejudiced at the trial from the multiple count treatment of his calls to the Hatlens, for whether this conduct was alleged in one or several counts, the government's evidence would have been the same. Thus, all of the convictions under § 223(1)(D) will be affirmed.

▮▮▮ Finally,[7] we turn to appellant's contention that in instructing the jury on

---

son at the called number hung up the telephone this would not constitute "conversation" within the meaning of this law.

**5.** *See also United States v. Romano*, 382 U.S. 136, 138, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

**6.** The doctrine was not applied as a matter of discretion.

**7.** We shall not discuss four arguments raised in appellant's brief because upon consideration we find them to be totally devoid of merit. These contentions are as follows: (1) that the

count V,[8] the felony count predicated on 18 U.S.C. § 875(c), the trial court wrongfully denied appellant's request for a lesser-included offense charge under 47 U.S.C. § 223(1)(B). The latter statute prohibits the making of a telephone call without disclosing one's identity with intent to threaten.

Section 875(c) proscribes the transmission "in interstate commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another." Section 223(1)(B) provides that it is a crime to "make a telephone call, whether or not conversation ensues, without disclosing [one's] identity and with intent to annoy, abuse, threaten, or harass any person at the called number." The maximum sanction under § 875(c) is a $1,000 fine and five years' imprisonment, while that under § 223(1)(B) is a $500 fine and six months' imprisonment. The defense submitted a request to charge[9] on the lesser-included offense which was rejected on grounds that there was no evidence of the "without disclosing identity" element of § 223(1)(B).

We agree that the appellant was not entitled to the requested lesser-included offense charge. The test for determining which verdicts a jury may return under Rule 31(c), F.R.Cr.P., and, thus, which offenses should be included in the charge, is set forth in

Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Government of Virgin Islands v. Carmona, 422 F.2d 95, 100 (3d Cir. 1970). Sansone provides that

. . . [i]n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifie[s] it . . . [is] entitled to an instruction which would permit a finding of guilt of the lesser offense . . . (Citation omitted) . . . A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

380 U.S. at 349–50, 85 S.Ct. at 1009. A lesser-included offense charge is inappropriate where, upon examination of the relevant statutes, it appears that the offense claimed to be lesser-included contains an additional element not part of the allegedly inclusive offense. Government of Virgin Islands v. Parrilla, 550 F.2d 879 (3d Cir. 1977); Government of Virgin Islands v. Smith, 558 F.2d 691, 695 (3d Cir. 1977).

The appellant asserts that § 223(1)(B) is lesser-included within § 875(c). However, the former offense contains an element, non-disclosure of identity, which is not re-

---

trial judge erroneously denied the appellant's motion for a mistrial upon the prosecutor's attempt during summation to draw an adverse inference from the defense's failure to call a certain witness; (2) that the court-appointed counsel's refusal to call certain witnesses whom appellant deemed important to his defense constituted incompetency of counsel entitling appellant to a new trial; (3) that the appellant was denied his right to a speedy trial; and (4) that the trial judge should have disqualified himself on account of bias against the appellant. We note that the latter three arguments were raised by counsel for the appellant pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

8. The concurrent sentence doctrine does not operate as jurisdictional bar to consideration of challenges to multiple convictions, although one conviction is valid and concurrent sentences have been imposed. Benton v. Maryland, 395 U.S. 784, 787–91, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Here it is appropriate to consider appellant's challenge to the felony

conviction although his § 223(1)(D) convictions have been affirmed because violation of probation would subject appellant to a considerably greater prison term for the felony than for the § 223 offenses.

9. The defense made the following request to charge:

With regard to Counts IV and V, if you are left with a reasonable doubt whether the words allegedly spoken by Mr. Lampley as recited in the indictment were in fact said by him, but that he made both of the telephone calls in question in interstate commerce and did so without disclosing his identity with the intent of threatening the person at the called number, then (if you find each of these elements beyond a reasonable doubt) you may convict him of an offense under 47 U.S.C. § 223(1)(B) which I shall refer to as "Making A Telephone Call With The Intent To Threaten."

quired under the latter. Appellant's argument that the non-disclosure element is not always required for a § 223(1)(B) offense and, hence, that § 223(1)(B) can be lesser-included is not convincing. The trial judge properly refused the defense's request to charge.

The judgment appealed from will be affirmed.

GIBBONS, Circuit Judge (concurring in part and dissenting in part).

I join in the majority's opinion except to the extent that it holds that we should not reach the question whether the counts alleging repeated calls to the Hatlens are multiplicitous. I respectfully dissent from the majority's reliance upon *Hirabayashi v. United States*, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), to dispose of that contention. Moreover, I have considered the appellant's multiplicity contention and find it to be meritorious. Therefore, I dissent from the judgment affirming Lampley's conviction on all of the counts.

## I. THE CONCURRENT SENTENCE DOCTRINE

The October Term, 1942, was not a vintage year for the Supreme Court's jurisprudence of individual rights and due process of law. Preoccupied with a threat to the country's external security, the Court countenanced many assaults on individual liberty which, with the benefit of hindsight, we now know were both intolerable and unnecessary. Among the more egregious examples of the Court's yielding to temporary hysteria were the decisions in *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), and *Hirabayashi v. United States*, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). In *St. Pierre*, the petitioner had been imprisoned for five months for contempt for refusing to divulge to a grand jury the name of the person whose money he had embezzled. The Court avoided the sharp conflict between Judges Jerome Frank and Learned Hand on the scope of the privilege against self-incrimination

by holding, indefensibly I submit, that the expiration of the petitioner's sentence mooted the appeal from the criminal contempt conviction, even though the government intended to force St. Pierre to testify before another grand jury, thereby raising the possibility of a subsequent conviction and sentence. In *Hirabayashi*, the Court avoided deciding whether American citizens could by military order be placed in concentration camps solely because of their race or nationality. The Court held that because the American citizen defendant, a senior at the University of Washington, had received a concurrent sentence for violation of a lawful curfew order,[1] it was unnecessary to consider whether his conviction for failing to report to the concentration camp was valid. The only merit of *Hirabayashi's* concurrent sentence holding is that, by resorting to that device, the Court avoided the worse courses of explicitly overruling *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1867), or of explicitly endorsing the power of military authorities to place American citizens in concentration camps on account of their race or national ancestry.

With a return to normalcy, the twin disasters of *St. Pierre* and *Hirabayashi* were, I submit, repudiated in *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Their demise was anticipated in *Fiswick v. United States*, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946), *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), and *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Each of these cases recognized that when by a conviction a government brands a person a criminal, that person is affected by the branding and thus should be heard to complain, whether or not the conviction resulted in custody. The Court distinguished *St. Pierre* and *Hirabayashi* by presuming that collateral legal consequences would flow from the mere existence of a conviction.

---

1. Even that part of the Court's decision upholding the curfew order is of dubious validity.

*See Sibron v. New York,* 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

In the instant case Lampley may challenge any criminal conviction on direct appeal unless the government can overcome that presumption and show "that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57, 88 S.Ct. at 1900. No such showing has been made here. Indeed, when compared with a single conviction, several convictions for violating 47 U.S.C. § 223(1)(D) could certainly have different legal consequences in the future. If Lampley should violate probation and be incarcerated, the number of convictions will affect his eligibility for parole. Moreover, the multiple convictions might count for purposes of multiple-offender statutes if Lampley is again convicted.

While the presumption of collateral legal consequences was the device by which the Supreme Court rid itself of the embarrassments of *St. Pierre* and *Hirabayashi,* that presumption seems to me an unnecessary complication. In any sanctioning system which provides for appellate review, a defendant ought to be able to assert the invalidity of any charge that a sovereignty has laid upon him. The executive branch has resorted to the judicial system to brand the defendant a wrongdoer and has received the benefit of the judiciary's participation in that branding. While the conviction stands, the legitimating effect of the judiciary's concurrence remains. I would much prefer to eliminate speculation about collateral legal consequences. Thus, I would hold that a defendant always has standing to challenge on appeal the validity of any conviction. For legal realists, I suggest, that is what *Sibron v. New York* really means. But even if we search for possible collateral legal consequences, such consequences are readily apparent here. Accordingly, we should consider the multiplicity challenge on the merits.

Nor am I convinced that we should attach to the footnote in *Barnes v. United States,* 412 U.S. 837, 848 n.6, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the significance the majority attaches to it. The Supreme Court, in reviewing federal convictions, exercises a discretionary certiorari jurisdiction, and its interest in granting certiorari is primarily with respect to particular issues. The discretionary application of the concurrent sentence doctrine in a case of discretionary review is no justification for its application by a court in which review is a matter of right. I can think of no reason which would justify its application in this case, even as a matter of discretion, when as recently as 1975 we declined to do so. *United States v. Keller,* 512 F.2d 182 (3d Cir. 1975). Even exercises of discretion should be principled.

## II. THE MULTIPLICITY CLAIM

Counts III through XIII of the superseding indictment charge the appellant with violations of 47 U.S.C. § 223(1)(D), which provides:

> Whoever
>
> (1) in . . . interstate . . . communication by means of telephone—
>> (D) makes *repeated* telephone calls, during which conversation ensues, solely to harass any person at the number called . . .
>
> shall be fined not more than $500 or imprisoned not more than six months, or both.

(emphasis added). As the majority opinion discloses, other parts of § 223 make criminal the single use of an interstate telephone, as long as the defendant acted with the requisite specific intention. The distinguishing feature of § 223(1)(D) is that it proscribes use, i. e., a course of conduct—and not single calls. Lampley contends that the government's indictment arbitrarily divided the single course of conduct proscribed by the statute into eleven separate courses of conduct.

Pursuant to that contention, Lampley brought a motion to compel the government to elect among multiplicitous counts under § 223(1)(D). Multiplicity refers to the practice of charging the commission of a single offense in more than one count. *See Unit-*

*ed States v. Allied Chemical Corp.*, 420 F.Supp. 122 (E.D.Va.1976). It should be distinguished from duplicity, which is the joining of two offenses in a single count. *See United States v. Starks*, 515 F.2d 112, 116 & n.5 (3d Cir. 1975). The vices of multiplicity are: (1) that it may result in multiple sentences for the same offense; (2) that it may have an adverse psychological effect on the jury by suggesting that many offenses took place, *see* Wright, Federal Practice and Procedure § 142, at 311 (1969 ed.); and (3) that it creates a more negative record of convictions and thus produces greater likelihood of collateral legal consequences. A multiplicity problem usually arises when a defendant has engaged in continuing or repeated illegal conduct and the government attempts in its indictment to divide that course of conduct into separate and distinguishable illegal acts. If the court finds that the defendant's acts constituted only one illegal course of conduct, the appropriate remedy is to compel the prosecution to elect among the multiplicitous counts. *See, e. g., United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 220, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952) (§ 15 of the Fair Labor Standards Act punishes a "course of conduct rather than separate items in such course").

When a statute refers explicitly to a course of conduct as the offense, the test for multiplicity obviously should be even more stringently applied than in contexts such as the Fair Labor Standards Act. No single isolated telephone call could be a violation of § 223(1)(D). Nor would a series of isolated, unrelated calls suffice. Judge Newcomer has construed § 223(1)(D) as follows:

> First, the phone calls must be "repeated". The court takes this to mean repeated in close enough proximity to another to rightly be called a single episode, and not separated by periods of months or years. This condition both requires the repeatedness as an element of the legally cognizable charge, and at the same time insures that the courts will not be flooded with complaints growing out of a single unpleasant call with some acquaintance.

> Second, the repeated calls must be made "solely to harass" and not merely to "annoy, abuse, threaten, or harass" as in the case of any anonymous phone call under § 223(1)(B).

*United States v. Darsey*, 342 F.Supp. 311, 313 (E.D.Pa.1972).

Of the eleven counts charging repeated telephone calls in the instant case, all referred to calls from a telephone in Downingtown, Pennsylvania. All but one referred to calls to a specific number (608–992–4976) in Evansville, Wisconsin. The remaining count referred to calls to a different number (901–986–3160) in Hollow Rock, Tennessee. The Hollow Rock telephone number belongs to Mrs. Simmons, the mother of Elizabeth Hatlen, the object of Lampley's peculiar obsession. The Evansville, Wisconsin, number belongs to Elizabeth Hatlen. I agree with the majority that Count XI, charging repeated calls to Mrs. Simmons's number, sets forth a distinct offense. But all of the other counts refer to repeated calls to Mrs. Hatlen's number between May 14, 1974, and March 16, 1975. Except for Count III, which charges "repeated" calls "on or about May 14, 1974, to on or about May 16, 1974," each of the counts dealing with "repeated" calls to the Evansville number refers to such calls on or about a specific date. Nothing in the superseding indictment suggests why calls on these dates were regarded as separate episodes. The evidence establishes that there were many other calls on dates not mentioned in the indictment. The Hatlens' testimony strongly suggests that they regarded all of the phone calls between May, 1974, and March, 1975, including calls on dates not mentioned in the indictment, as one continuing harassment. Mrs. Hatlen testified that there always were about ten to twelve calls per week. Trial Transcript, at 107–08. Mr. Hatlen testified that the calls averaged ten calls a week throughout that period. Trial Transcript, at 120. Many of these calls were placed as "collect" calls to "Elizabeth Lampley" or "Judy Lampley" and thus did not appear on Lampley's telephone bills. The evidence

suggests that the calls which did not appear on Lampley's telephone bill for his Downingtown, Pennsylvania, telephone bridged the time intervals between the dates selected by the government for separate prosecution. The dates set forth in the separate counts of the indictment as separate episodes are nothing more than the dates of calls billed to Lampley's number.

Clearly the evidence permitted a finding that an average of ten calls a week between May of 1974 and March of 1975 constituted an illegal course of conduct proscribed by § 223(1)(D). But nothing either in the indictment or in the record suggests that Lampley engaged in several courses of conduct directed toward Mrs. Hatlen rather than just one. The dates appearing on Lampley's phone bill do not turn a continuing course of conduct into separate and distinguishable acts. If there had been a significant lapse of time between series of phone calls, if the motivation for one series had differed in some manner from the motivation for another, or if the objects of the harassment had been different, it might be possible to treat the separate series of calls as separate episodes. But here the motivation, Lampley's obsessive fixation on Mrs. Hatlen as an object of affection, was constant. In addition, the calls constantly focused on Mrs. Hatlen as the object of harassment, and they never ceased. By way of contrast, the calls to Mrs. Simmons were intended to harass her rather than her daughter. Thus, while those calls grew out of the same diseased fixation as the calls to the Hatlens, they were not part of the same illegal course of conduct.

The government urges that we should not consider the district court's denial of Lampley's motion to elect among the counts in the superseding indictment because he had moved earlier to dismiss Count II of the original indictment. That count had charged the defendant with making harassing phone calls to the Hatlens between May 5, 1974, and February 9, 1975. Lampley based his motion on the argument that from the wording of the indictment he was unable to determine the pattern of conduct with which he had been charged and thus was unable to prepare an effective defense. The government would have us construe Lampley's vagueness motion as a motion to cure a duplicitous complaint and thus as a concession that he had made multiple separate series of offending phone calls. For two reasons I cannot accept the government's argument. First, it misstates the thrust of Lampley's vagueness motion. Second, even if the government's argument accurately characterized Lampley's motion, the fact that he made the motion would not relieve the government of its burden of charging and establishing how many separate courses of conduct took place.

Since the court charged that the jury should treat each series of calls separately, the jury never considered whether there was a single course of conduct. But the court did charge that in order to convict the defendant on any count, the jury had to find multiple calls and a sole intent to harass. Thus the verdict necessarily required a finding on all the elements of the § 223(1)(D) offense. Ordinarily, because of the possibility of jury prejudice arising from more numerous charges, the remedy for the failure to grant a motion to elect among multiplicitous counts would be a new trial. In this instance, however, the same evidence of telephone calls would have been admissible even if the election motion had been granted. Lampley's only defense was that he did not make the calls. Under these circumstances I would conclude that while his convictions on more than one § 223(1)(D) count should not stand, one such conviction can survive and no new trial is required.

I would vacate the judgment of sentence on all but two of the § 223(1)(D) counts, but would otherwise affirm.