**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4081
_____

HARRY G. PARKIN,
Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 1-10-cv-03582)
District Judge:  Honorable Joseph E. Irenas

Argued
October 29, 2013

_____

Before:  McKEE, Chief Judge, FISHER, and SLOVITER, Circuit Judges.

(Filed: May 5, 2014)

_____

OPINION
_____

DARREN M. GELBER, Esq. (argued)
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive
8th Floor
Woodbridge, NJ 07095

       Counsel for Appellant

MARK E. COYNE, Esq.
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

GLENN J. MORAMARCO, Esq. (argued)
Office of the United States Attorney
Camden Federal Building & Courthouse
401 Market Street
Camden, NJ 08101

       Counsel for Appellee

PER CURIAM

Harry Parkin appeals the district court's denial of his motion to vacate sentence under 28 U.S.C. § 2255. For the reasons that follow, we will affirm.[1]

## I.

We exercise plenary review over a district court's legal conclusions and apply a clearly erroneous standard in reviewing factual findings. *See United States v. Lilly*, 536

---

[1] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 29 U.S.C. § 2891.

2

F.3d 190, 195 (3d Cir. 2008). We also exercise plenary review over a district court's conclusions as to a defendant's procedural default. *Hodge v. United States*, 554 F.3d 372, 377 (3d Cir. 2009). We review the district court's invocation of the concurrent sentence doctrine for abuse of discretion. *See United States v. Lampley*, 573 F.2d 783, 788 (3d Cir. 1978).

## II.

A prisoner in custody under a sentence of a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move to "vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).[2] Parkin argues on appeal that (1) the indictment, evidence, and jury instructions exclusively presented a theory of mail fraud based on deprivation of honest services through concealment and self-dealing; and (2) the evidence used in support of the invalid mail fraud counts "spilled over" to negatively impact the extortion count.

As a threshold matter, we acknowledge that as a result of the Supreme Court's decision in *Skilling v. United States,* 130 S. Ct. 2896 (2010), the Government's concealed conflict of interest theory and jury instructions based on that theory constituted "clear and obvious" legal error. *United States v. Riley*, 621 F.3d 312, 323 (3d Cir. 2010); *United States v. Wright*, 665 F.3d 560, 567 (3d Cir. 2012) (noting that the

---

[2] Because Parkin would be serving a term of supervised release on Counts 1-12 after completing his period of incarceration on Count 13, Parkin was "in custody" on the mail fraud counts when he filed his § 2255 motion. *See generally, Peyton v. Rowe,* 391 U.S. 54 (1968) (prisoner serving consecutive sentences is "in custody" under any one of them).

jury's verdict could be "defective" where the jury was instructed that it could convict for depravation of honest services under a conflict of interest theory). However, as a general rule, where a defendant has failed to raise a claim on direct review, the claim may be raised in habeas only if the defendant can demonstrate either cause and prejudice, or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). Thus, we will focus on whether the district court erred in dismissing Parkin's § 2255 motion due to an incurable procedural default.

## A. Procedural Default

In order to obtain collateral review on a procedurally defaulted claim, a habeas petitioner must show either (1) cause for the procedural default and actual prejudice, or (2) that s/he is actually innocent. *See Bousley,* 523 U.S. 614, 622 (1998); *Hodge,* 554 F.3d at 378-79. Parkin does not claim to be actually innocent of attempted extortion. He can therefore only cure his procedural default by establishing "cause and prejudice" – i.e., that "some objective factor external to the defense impeded counsel's efforts" to raise the claim. *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (*quoting McCleskey v. Zant*, 499 U.S. 467, 493 (1991)); *Hodge*, 554 F.3d at 378-79.

Parkin claims that he could not have reasonably been expected to raise a *Skilling*-based argument until the Supreme Court issued its decision in *Skilling*, overturning "'a longstanding and widespread practice . . . which a near-unanimous body of lower court authority has expressly approved.'" *Reed v. Ross*, 468 U.S. 1, 17 (1984) (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982). Thus, he argues that there is no procedural bar to raising that claim now. *Id*. at 16 (where "a constitutional claim is so novel that its

4

legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim").  We do not think that is the situation here.

Futility "cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."  *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).  The claim raised in *Skilling* was not novel at the time of Parkin's appeal.  *See id*. at 622 (the "reasonably available" inquiry focuses on whether the claim was "novel," *not* whether the claim departed from "settled law").  Indeed, prior to Parkin's trial and appeal, many defendants, including Andrew Skilling himself, had argued that § 1346 was unconstitutionally vague.  *See, e.g., United States v. Hausmann*, 345 F.3d 952, 958 (7th Cir. 2003); *United States v. Rybici,* 354 F.3d 124, 126 (2d Cir. 2003) (en banc) ("[w]e agreed to rehear this case in banc in order to consider whether 18 U.S.C. § 1346 . . . is unconstitutionally vague."); *United States v. Welch*, 327 F.3d 1081, 1109 n.29 (10th Cir. 2003); *United States v. Panarella*, 277 F.3d 678, 698-99 (3d Cir. 2002); *Ryan v. United States*, 645 F.3d 913, 917 (7th Cir. 2011) ("If Ryan's lawyers had done what Skilling's lawyers did, the controlling decision today might be Ryan rather than Skilling."), vacated on other grounds, 132 S.Ct. 2099 (2012); *Jennings v. United States*, 696 F.3d 759, 763 (8th Cir. 2012) ("Jennings could have at any time raised the same legal issue that had been raised in *Skilling*").

Parkin's assertion, that the *Skilling* challenge was not reasonably available to counsel, is fatally undermined by the plethora of cases raising that very claim.  *See Engle v. Isaac*, 456 U.S. 107, 134 (1982) (where the foundation of a claim "is available, and other defense counsel have perceived and litigated that claim, the demands of

5

comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.").

Parkin has thus shown neither actual innocence of attempted extortion nor that there was cause and prejudice for failing to raise a constitutional-vagueness challenge to § 1346 (which would have encompassed the prejudicial spillover argument). Accordingly, Parkin procedurally defaulted his challenge to Count 13, and the district court correctly denied his §2255 motion.

### B. The Concurrent Sentence Doctrine

Under the concurrent sentence doctrine, a court has "discretion to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent." *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997); *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1100 (3d Cir. 1989) (citing *United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978)). Since "the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and preserves judicial resources for more pressing needs." *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986) (citations omitted).

On habeas review, we presume that a wrongful conviction carries continued collateral consequences, and we therefore agree that this appeal is not moot. *See Spencer v. Kemna*, 523 U.S. 1, 8-12 (1998); *Kendrick v. Dist. Atty of Cnty. of Philadelphia*, 488 F.3d 217, 220 (3d Cir. 2007). We would normally be reluctant to affirm the district court's application of the concurrent sentence doctrine under the

6

circumstances here because an aggregate sentence could encompass a wrongful conviction. *See United States v. Pollen,* 978 F.2d 78, 83 n.10(3d Cir. 1992); *Kendrick*, 488 F.3d at 219 (rejecting district court's reliance on the concurrent sentence doctrine where defendant received "an aggregate sentence of fifteen to thirty years imprisonment, that . . . encompassed the invalid . . . conviction.").

However, Parkin was convicted of attempted extortion under a separate statute that is in no way implicated by the Court's subsequent ruling in *Skilling*. While Parkin's honest services convictions may have been based upon conduct that the Court subsequently held did not violate §1346, his conviction for attempted extortion under § 1951(a) is not undermined by that decision. *See McKie*, 112 F.3d at 628; *Jones*, 805 F.2d at 1128 n.4 (habeas challenge which would affect only one of two concurrent counts need not be reached under concurrent sentence doctrine: " the concurrent sentence doctrine . . . may appropriately be applied when the alleged error is associated only with counts for which concurrent sentences are imposed and the other sentences are unassailable."); *Cheeks v. Gaetz*, 571 F.3d 680, 684-85 (7th Cir. 2009) (noting that the concurrent sentence doctrine "allows appellate courts to decline to review a conviction carrying a concurrent sentence when one 'concurrent' conviction has been found valid").

Parkin's conviction for attempted extortion resulted in a 90-month sentence which ran concurrently with his 60-month sentence for mail fraud. We therefore cannot conclude that the district court abused its discretion by invoking the concurrent sentence doctrine and not reaching the merits of his *Skilling*-based claims for relief. *See Jones,* 805 F.2d at 1128.

7

**IV.**

For these reasons, we will affirm the district court's denial of Parkin's motion to vacate sentence under § 2255.

<u>McKEE, Chief Judge, concurring.</u>, 12-4081

I agree that, based on the facts of this case, we cannot say that the district court erred by disposing of the matter as it did.  Parkin was convicted of honest services mail fraud based on undisclosed self-dealing – a theory no longer recognized as a valid basis for an honest services mail fraud conviction.  *See Skilling*, 130 S. Ct. at 2929-34.  As we noted on direct appeal, Parkin's convictions stemmed from his participation in a scheme to:

> defraud the citizens of Mercer County of their right to honest services by using his official position to obtain contracts for CJW&R in order to protect and advance his own financial interests; by attempting to obtain an ownership interest in CJW&R; and by *concealing material information concerning his financial interests* in CJW&R from other government officials and the public.

*Parkin*, 319 F. App'x at 105 (emphasis added).  Nowhere in our opinion did we mention the terms "bribe" or "kickback."

The Government did not allege at trial that Parkin accepted bribes or engaged in a kickback scheme, nor did the Government's proposed jury instructions on the honest services mail fraud make any mention of bribery or kickbacks.  SA 392.  As the Government now concedes, its "arguments to the jury focused primarily on the now-discredited failure to disclose theory of honest services mail fraud."  Gov. Br. at 21.

A habeas petitioner may establish that he is "actually innocent" of the crimes against him by showing that "in light of all the evidence it is more likely than not that no reasonable juror would have convicted him."  *Bousley*, 523 U.S. at 623, *quoting Schlup*

*v. Delo,* 513 U.S. 298, 327-28 (1995) (internal quotation marks omitted); *Wright v. Vaughn,* 473 F.3d 85, 92 (3d Cir. 2006).

Although the Government now claims that the evidence introduced at trial "overwhelmingly" demonstrates that Parkin engaged in bribery and kickbacks, *see, e.g.,* SA 931-32, SA 939, the Government is clearly trying to shoehorn a conflict-of-interest theory into the post-*Skilling* bribery-and-kickback framework.  *See Riley*, 621 F.3d at 324 ("where the fraudulent act is the non-disclosure of a conflict of interest, it would demean the judicial process to attempt to put the genie back in the bottle by essentially rewriting the charge to the jury.").

The Government indicted Parkin for 12 counts of conduct that is no longer criminalized.  Although the Government now takes pains to avoid the force of *Skilling*, candor should compel the Government to forthrightly concede that its prosecutorial theory, and trial focus, rested on a now-discredited legal theory.

During trial, Parkin's counsel raised a concern that, although the trial had focused on honest services mail fraud, the prosecutor was attempting to suggest that the jury could convict Parkin for bribery.  The court dismissed that concern saying: "I don't think that they were saying that . . . somebody came and offered the defendant some money or benefits."  30T125-5 to 10.  The prosecutor affirmed that he was not trying to convince the jury that: "[y]ou know, somebody came and offered the defendant some money or benefits."  *Id.*  The Assistant United States Attorney then clarified the point for the court: "What's being taken here is the public's right, the government's right, and the Mercer County Improvement Authority's honest services. Whether or not he got a benefit, or

2

obtained any money or anything else *just doesn't have any place in this.*" Appellant's Br. At 7 (citing 28T71-14 to 20) (italics added). As the saying goes, "that was then, this is now."

Now the Government comes before us and argues that the mail fraud theory at trial encompassed bribery and kickbacks. The Government argues: "[t]he Government did not use the word 'bribery' or 'kickback' in the indictment, nor did it use those particular words when presenting its closing argument to the jury. But that does not mean that the Government did not prove that Parkin engaged in conduct that constituted bribery or kickbacks." Appellee's Br. at 56. The argument continues: "The facts proven at trial demonstrate that Parkin solicited bribes and kickbacks, and thus Parkin cannot bear the burden of demonstrating 'actual innocence.'" *Id*. at 57.

Bribery has thus undergone a metamorphosis that has transformed it from a prosecutorial theory that "just doesn't have any place in this," to the lynchpin of the Government's argument on appeal. I understand why the Government adopted this adversarial bait and switch after *Skilling*. However, the argument could have – and should have – been made in a less disingenuous and more candid manner.

Although I agree with, and fully join the analysis in the *Per Curiam* opinion of my colleagues, I feel compelled to write separately to ensure that the "now you see it, now you don't" approach to advocacy adopted by the Government in this case does not pass without comment.